GARCIA RAINEY BLANK & BOWERBANK LLP
A LIMITED LIABILITY PARTNERSHIP
NORMA V. GARCIA, Cal. Bar No. 223512
ngarciaguillen@garciarainey.com
JEFFREY M. BLANK, Cal. Bar No. 217522
jblank@garciarainey.com
695 Town Center Drive, Suite 540
Costa Mesa, CA 92626
Telephone:   (714) 382-7000
Facsimile:   (714) 784-0031
Attorneys for Plaintiff
LI MEI CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LI MEI CHEN, an individual<br><br>Plaintiff,<br><br>v.<br><br>URBAN COMMONS 6TH AVE SEATTLE, LLC, a Delaware Limited Liability Company; TAYLOR WOODS, an individual; HOWARD WU, an individual; WU DEVELOPMENT, LLC, a California Limited Liability Company; ANNIE WU, an individual; and DOES 1 through 10, inclusive<br><br>Defendants. | **Case No.:** 2:21-cv-08866-JLS-DFM<br>**Judge**:   Hon. Josephine L. Staton<br>**Dept**:   8A<br><br>**PLAINTIFF LI MEI CHEN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Date: March 3, 2023<br><br>**UNDER SUBMISSION** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **INTRODUCTION** ................................................................. 1

II.   **STATEMENT OF FACTS** ................................................... 2

     A.    Plaintiff Enters into Subscription Agreement (SA) for Membership Interest in UC Seattle Based on Defendants' Representations Therein. ............................................................................... 2

     B.    Plaintiff Also Enters into Investment Agreement (IA). ...................... 3

     C.    The SA and IA are Unregistered Securities. ................................. 3

     D.    Defendants Omitted Material Facts in Soliciting Plaintiff's Investment. ............................................................................ 4

     E.    Defendants Engaged in Continued Fraud After Plaintiff's Investment ........................................................................... 4

     F.    Defendants Fail to Return Plaintiff's Investment Funds or Provide Guaranteed Preferred Returns While Possessing Plaintiff's Investment .......................................................................... 5

III.   **RELEVANT PROCEDURAL HISTORY** ............................. 7

     A.    Service of Summons and Complaint ......................................... 7

     B.    Plaintiff Properly Served UC Seattle by Personally Serving Wu. .......... 7

     C.    First Entry of Default and Motion for Default Judgment ................... 8

     D.    Current Entry of Default Against Defendants .............................. 9

IV.   **LEGAL STANDARD ON MOTION FOR DEFAULT JUDGMENT** ... 9

V.    **PLAINTIFF SATISFIES THE PROCEDURAL REQUIREMENTS FOR DEFAULT JUDGMENT.** ................................................ 10

VI.   **THE *EITEL* FACTORS FAVOR ENTRY OF DEFAULT JUDGMENT.** .................................................................... 11

     A.    Plaintiff Would Be Prejudiced Without Entry of Default Judgment. .... 11

     B.    Plaintiff Has Demonstrated the Merits of Her Claims. ..................... 12

         1.    Securities Act §12 (2nd Cause of Action) ..................... 12

         2.    Cal. Corp. Code §25110 (9th Cause of Action) ............... 14

         3.    Cal. Corp. Code §§25400, 25401 (6th, 7th Causes of Action) ..... 14

4.      Securities Act §15 (3rd Cause of Action).......................................15

5.      Cal. Corp. Code §§ 25504, 25401, 25504.1 (10th, 11th Cause of Action) .......................................................................................16

6.      Securities Exchange Act §10(b) & Rule 10b-5 (5th Cause of Action).......................................................................................17

7.      Cal. Corp. Code §§25200 *et seq.* & 25501.5 (12th Cause of Action).......................................................................................18

8.      Breach of Contract (13th Cause of Action)...................................18

9.      Cal. Penal Code §496(c) (14th Cause of Action).........................19

10.     Fraud (15th – 18th Cause of Action)..............................................19

11.     Cal. Bus. & Prof. Code §17200 *et seq.* (22nd Cause of Action).......................................................................................20

C.    The Damages Sought Are Proportionate to the Defendants' Conduct. .......................................................................................21

D.    There is No Possibility of Disputed Material Facts. ............................21

E.    Defendants' Default Was Not Due to Excusable Neglect. ...................21

F.    The Policy of Favoring Decisions on the Merits Not Dispositive.........22

VII.    **PLAINTIFF IS ENTITLED TO THE REQUESTED DAMAGES** .........**22**

VIII.   **CONCLUSION** ...............................................................................**25**

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Acceptance Indem. Ins. Co. v. Bray*,
   No. 18-CV-2996-RGK-FFM,
   2018 WL 6017017 (C.D. Cal. July 26, 2018) ................................................12

*Air Separation, Inc. v. Underwriters at Lloyd's of London*,
   45 F.3d 288 (9th Cir. 1995)...............................................................................25

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980).............................................................................9

*Benny v. Pipes*,
   799 F.2d 489 (9th Cir. 1986)...............................................................................9

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ..........................................................................................17

*Board of Trs. of the Sheet Metal Workers' Pension Plan of S. Cal. v.*
   *Westway Constr., Inc.*,
   No. 09-CV-7023-GAF-FMO,
   2010 WL 11596465 (C.D. Cal. Feb. 26, 2010).................................................10

*Cumbie v. Tibbles*,
   No. 2:21-CV-01090 JAM AC,
   2022 WL 17830255 (E.D. Cal. Dec. 21, 2022).................................................24

*DirecTV, Inc. v. Hoa Huynh*,
   503 F.3d 847 (9th Cir. 2007)...............................................................................9

*Discovery Commc'ns, Inc. v. Animal Planet, Inc.*,
   172 F. Supp. 2d 1282 (C.D. Cal. Sep. 17, 2001)..............................................25

*Durham v. Kelly*,
   810 F.2d 1500 (9th Cir. 1987)...........................................................................15

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986)........................................................10, 11, 21, 22

*Erlich v. Menezes*,
   21 Cal. 4th 543, 552 (1999)..............................................................................23

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ..........................................................................................17

*Geddes v. United Fin. Grp.*,
   559 F.2d 557, 560 (9th Cir. 1977).....................................................................12

*Gibble v. Car–Lene Research, Inc.*,
   67 Cal. App. 4th 295 (1998)........................................................................8

*Hollinger v. Titan Capital Corp.*,
   914 F.2d 1564 (9th Cir. 1990)................................................................17

*I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*,
   No. C-03-1561 MMC,
   2005 WL 3590984 (N.D. Cal. Dec. 30, 2005) ......................................15

*In re Metricom Sec. Litig.*,
   No. C 01-4085 PJH,
   2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ........................................16

*Johnson v. Neilson (In re Slatkin)*,
   525 F.3d 805 (9th Cir. 2008)..................................................................24

*Kerr Corp. v. Tri Dental, Inc.*,
   No. 12-CV-891-DOC-CW,
   2013 WL 990532 (C.D. Cal. Mar. 11, 2013) ........................................11

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*,
   578 F. Supp. 2d 1224 (C.D. Cal. 2008)...................................................8

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
   725 F. Supp. 2d 916, 919 n. 19 (C.D. Cal. 2010).....................10, 11, 18, 21

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
   235 Cal. App. 3d 1220 (1991)................................................................23

*Lazar v. Super. Ct.*, 12 Cal. 4th 631 (1996)................................................19

*Local TV, LLC v. Super. Ct.*,
   3 Cal. App. 5th 1 (2016).........................................................................20

*Nordahl v. State of Cal. Dep't of Real Estate*,
   48 Cal. App. 3d 657 (1975)....................................................................24

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   135 S.Ct. 1318 (2015) ............................................................................12

*People v. McKale*,
   25 Cal. 3d 626 (1979).............................................................................20

*PepsiCo, Inc. v. Cal. Sec. Cans ("PepsiCo")*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002)..........................................*passim*

*PepsiCo. Inc. v. Triunfo-Mex, Inc.*,
   189 F.R.D. 431 (C.D. Cal. 1999) .......................................................9, 10

*Perkins v. Standard Oil Co.*,
   487 F.2d 672 (9th Cir. 1973)..................................................................25

*Philip Morris USA v. Castworld Prods., Inc.*,
    219 F.R.D. 494, 499 (C.D. Cal. 2003) ............................................... 11

*Pinter v. Dahl*,
    486 U.S. 622, 638 (1988) ...................................................... 12, 13

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ..................................................... 24

*S.E.C. v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ............................................................... 13

*SEC v. Dain Rauscher, Inc.*,
    254 F.3d 852 (9th Cir. 2001) ..................................................... 17

*SEC v. Rana Research, Inc.*,
    8 F.3d 1358 (9th Cir. 1993) ...................................................... 17

*Sparling v. Daou (In re Daou Sys.)*,
    411 F.3d 1006 (9th Cir. 2005) .................................................... 13

*Taylor Made Golf Co. v. Carsten Sports*,
    175 F.R.D. 658 (S.D. Cal. 1997) .................................................. 25

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ............................................. 12, 21, 22

*Warfield v. Alaniz*,
    569 F.3d 1015, 1020 (9th Cir. 2009) .............................................. 13

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................ 20

*Wecosign, Inc. v. IFG Holdings, Inc.*,
    845 F. Supp. 2d 1072 (C.D. Cal. 2012) ............................................ 22

*Xerox Corp. v. Am. Mail Ctrs., Inc.*,
    No. 16-CV-42-DOC-KES,
    2016 WL 10835982 (C.D. Cal. Jul. 20, 2016) ...................................... 22


**Statutes**

15 U.S.C. §1117(a) ................................................................ 24

28 U.S.C. §1961 .................................................................. 25

Cal. Bus. & Prof. Code §17200 *et seq.* .......................................... 20

Cal. Civ. Code § 3287 ............................................................ 24

Cal. Civ. Code § 3288 ............................................................ 24

Cal. Civ. Code § 3289(b) ..................................................................................24

Cal. Civ. Code § 3294 .....................................................................................23

Cal. Civ. Code §3287 .......................................................................................24

Cal. Code Civ. P. §416.10 ..................................................................................8

Cal. Corp. Code §25019 ..................................................................................14

Cal. Corp. Code §25110 ..................................................................................14

Cal. Corp. Code §25200 *et seq.* ......................................................................18

Cal. Corp. Code §25400 ..................................................................................15

Cal. Corp. Code §25401 .............................................................................14, 15

Cal. Corp. Code §25500 ..................................................................................15

Cal. Corp. Code §25501 ..................................................................................15

Cal. Corp. Code §25501.5 ...........................................................................18, 24

Cal. Corp. Code §25504 ..................................................................................16

Cal. Corp. Code §25504.1 ...........................................................................16, 17

Cal. Penal Code §496 ...............................................................................19, 23, 24

Securities Act of 1933 ("Securities Act") ...........................................................3

Securities Act §5 (15 U.S.C. §77e) ..................................................................12

Securities Act §12 (15 U.S.C. §77l) .............................................................12, 13

Securities Act §15 (15 U.S.C. §77o) ...........................................................15, 16

Securities Exchange Act §10(b) (15 U.S.C. §78j(b)).............................................17

Servicemembers Civil Relief Act (50 U.S.C. App. §521) .....................................11

**Rules**

Fed. R. Civ. P. 12...........................................................................................7, 10

Fed. R. Civ. P. 4.........................................................................................2, 7, 8

Fed. R. Civ. P. 54............................................................................................24

Fed. R. Civ. P. 55(a) ....................................................................................2, 10

Fed. R. Civ. P. 55(b) .................................................................................2, 9, 22

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT

Local Rule 54...................................................................................................25

Local Rule 55-1 ................................................................................................10

Local Rule 55-2 ..........................................................................................10, 11

**Regulations**

SEC Rule 10b-5 (17 C.F.R. §240.10b-5) .................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendants[1] Urban Commons 6th Ave Seattle, LLC ("UC Seattle"), Taylor Woods ("Woods"), and Howard Wu ("Wu") induced Plaintiff Li Mei Chen ("Plaintiff" or "Mrs. Chen") to invest $300,000 of her retirement savings into their fraudulent securities scheme.   Specifically, in July 2020, Defendants solicited Plaintiff's purchase of a membership interest in UC Seattle, an entity purportedly formed by Woods and Wu to purchase and indirectly own (100%) of the Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington ("Hilton Seattle").

Unbeknownst to Plaintiff, Defendants were in serious financial trouble, so much so that Woods and Wu diverted Plaintiff's money to other projects for Urban Commons, LLC[2] ("Urban Commons"), the sole manager of UC Seattle that Woods and Wu manage and own.  Further, Defendants had been placing investment funds in a non-interest-bearing, non-refundable escrow account prior to their solicitation and acceptance of Plaintiff's investment and released all such funds to the Hilton Seattle seller by October 2020, violating Plaintiff's subscription agreement with Defendants. Then, after making the equivalent of only one guaranteed preferred return payment to Plaintiff in November 2020 under Plaintiff's investment agreement, Defendants repeatedly promised but never made any more guaranteed preferred return payments.

When Plaintiff gave notice to terminate her membership interest, Defendants made vague representations as to whether Plaintiff would receive her investment back or would receive guaranteed preferred return payments, and then ultimately ceased all communications with Plaintiff.   To date, Defendants have not returned Plaintiff's investment, and Plaintiff has no idea where Defendants squandered her money.

---

[1] "Defendants" shall collectively refer to defendants UC Seattle, Woods, and Wu.
[2] Urban Commons has been under involuntary Chapter 7 bankruptcy since April 29, 2021, U.S. Bankruptcy Court, Central District of California (Los Angeles), Bankruptcy Pet. No. 2:21-bk-13523-ER.

On November 10, 2021, Plaintiff filed a complaint based on Defendants' fraudulent sale to Plaintiff of unregistered and non-exempt securities. (Dkt. No. 1.) In accordance with Fed. R. Civ. P. 4, Plaintiff properly served the Summons and Complaint on each Defendant, and each Defendant failed to answer or move against the Complaint within the allotted 21-day period. (Declaration of Norma V. Garcia in support of Motion ("Garcia Decl."), ¶¶ 4-7, 11-12; Dkt. Nos. 12-14.) Based on Plaintiff's Requests, pursuant to Fed. R. Civ. P. 55(a), the Clerk entered Defendants' Default. (Dkt. Nos. 28, 30, 32, 35.) Plaintiff now moves for entry of default judgment against Defendants, jointly and severally, pursuant to Fed. R. Civ. P. 55(b).

## II.   **STATEMENT OF FACTS**

In or about January 2020, Defendants issued a private offering ("UC Seattle Offering") to investors, seeking to raise $30,000,000 in membership interest in UC Seattle. (Dkt. No. 1 – Complaint ("Compl."), at ¶ 16.) Woods and Wu created UC Seattle to indirectly purchase the Hilton Seattle and named Urban Commons as UC Seattle's sole manager, giving it "exclusive authority and control over all Company [UC Seattle] decisions in entering into and managing real estate investments." (*Id.*; Dkt. No. 1-1 – Exh. A to Compl. – Urban Commons 6th Ave Seattle, LLC Membership Interest Subscription Agreement ("SA"), pp. 1, 6.)

### A.   **Plaintiff Enters into Subscription Agreement (SA) for Membership Interest in UC Seattle Based on Defendants' Representations Therein.**

On July 3, 2020, Plaintiff received the SA, through which Defendants made various representations, including, but not limited to: **(i)** UC Seattle would complete the UC Seattle Offering by July 10, 2020; **(ii)** UC Seattle would not use or apply the purchase price until it had raised the necessary funds from the UC Seattle Offering, which would only be used to acquire the Hilton Seattle; **(iii)** the purchase price for the Hilton Seattle would be deposited into an interest-bearing secure bank account; **(iv)** if the subscription is terminated, the funds raised by UC Seattle would be returned to the investors plus interest; **(v)** UC Seattle was obtaining acquisition loans of

$70,000,000.00 to acquire and refurbish the Hilton Seattle; and **(vi)** Urban Commons would be sole manager of UC Seattle. (SA, p. 1; Compl., ¶¶ 17, 19-22.)

Based on the foregoing representations made in the SA, among others, Plaintiff executed the SA on July 3, 2020, and purchased a one percent (1%) membership interest by investing Three Hundred Thousand Dollars ($300,000.00) in UC Seattle. (Compl., ¶ 18; SA, pp. 1, 4.) On July 9, 2020, Plaintiff wired her $300,000 investment in UC Seattle. (Compl., ¶ 18; Declaration of Li Mei Chen ("Chen Decl."), ¶ 5, Exh. A.) That same day, Plaintiff received confirmation from Defendants that UC Seattle had received Plaintiff's funds. (Compl., ¶ 18.)

## B.   Plaintiff Also Enters into Investment Agreement (IA).

Plaintiff also entered into an Investment Agreement ("IA") on July 5, 2020 with Defendants Woods and Wu through Urban Commons, the sole manager of UC Seattle. (Compl., ¶ 26; *see also* Chen Decl., ¶ 9, Exh. B – IA.) Through the IA, Defendants made various representations, including, but not limited to, guaranteeing preferred returns such that Plaintiff would receive a six percent (6%) guaranteed preferred return per annum on her $300,000 investment, to be paid each calendar quarter at the rate of 1.5% each calendar quarter for as long Defendants held Plaintiff's investment. (IA, p. 1, §1(a)-(c); *see also* Compl., ¶¶ 26-27.)

Pursuant to the IA, Plaintiff is entitled to quarterly interest payments equaling 1.5% of the Investment Capital—Plaintiff's $300,000 investment—or $4,500.00. (*Id.*) To date, Plaintiff has only received the equivalent of one quarterly interest payment, split into two separate deposits: (i) $2,250.00 received on November 3, 2020 and (ii) $2,250.00 received on November 4, 2020. (Compl., ¶ 28; Chen Decl., ¶ 14, Exh. D - 2020 Q3 Quarterly Interest payment.)

## C.   The SA and IA are Unregistered Securities.

The SA and IA, through which Defendants offered and sold to Plaintiff a membership interest in UC Seattle, are unregistered securities in violation of the Securities Act of 1933 ("Securities Act") and were not exempt from such registration

or qualification.  (Compl., ¶ 29; *see also* SA and IA.)

**D.** **Defendants Omitted Material Facts in Soliciting Plaintiff's Investment.**

During Defendants' solicitation of Plaintiff's investment, Woods and Wu did not disclose their relationship with, involvement in, and/or ownership of Eagle Hospitality Trust ("EagleHT"), a Singaporean real estate investment trust (REIT) that was going to purchase UC Seattle from Woods and Wu upon the acquisition of the Hilton Seattle.  (Compl., ¶ 30.)  Specifically, Wu and Woods own equity in EagleHT and were the Chairman and Deputy Chairman, respectively, of the EagleHT board until at least May 2020.  (*Id.*; Request for Judicial Notice ("RJN"), Exh. 1.)

At the time they solicited Plaintiff's investment, Defendants failed to disclose the following material facts: **(1)** Urban Commons, not UC Seattle, was the Buyer listed on the Purchase and Sale Agreement ("PSA") for the Hilton Seattle, which was effective as of December 24, 2019; **(2)** Urban Commons could either (i) assign its interest to an entity it controlled or owned, as long as Wu and/or Woods control 25% or more of the assignee; or (ii) to EagleHT without condition; **(3)** as of December 2019, EagleHT defaulted on a $341,000,000.00 facility loan, on which Urban Commons was the master lessee; **(4)** Woods and Wu were under investigation by the Monetary Authority of Singapore and Singapore Stock Exchange for breaches of disclosure requirements, regulations, and listing rules relating to EagleHT SP, under which shares of EagleHT are traded, resulting EagleHT SP's suspension of trading.  (Compl., ¶¶ 16, 30-34; Chen Decl., ¶ 30, Exh. J, Art. 11, §11.1; RJN, Exh. 1.)

Indeed, Plaintiff relied on Defendants' misrepresentations and omissions in deciding to invest in UC Seattle.  (*Id.*, ¶ 35.)  But for such omissions and misrepresentations, Plaintiff would not have invested in UC Seattle.  (*Id.*)

**E.** **Defendants Engaged in Continued Fraud After Plaintiff's Investment**

Plaintiff wired her investment to UC Seattle on July 9, 2020.  (Chen Decl., ¶¶ 5-6, Exh. A.)  Defendant never provided Plaintiff with any documentation showing that her investment was deposited in an interest-bearing secure bank account, as

promised under the SA.  (*Id*., ¶¶ 20, 22, 24, 37, 40, Exhs. G, L.)  In addition, documents obtained from First American Title Insurance Company ("FAT") do not show Plaintiff's $300,000 investment was ever deposited in the escrow account for the acquisition of the Hilton Seattle.  (Garcia Decl., ¶ 27, Exh. D.)  Indeed, the first deposit after Plaintiff's investment was for only $50,000 on August 25, 2020.  (*Id*.)

On October 11, 2020, Plaintiff received an email addressed to all UC Seattle investors stating that Defendants were in the "final stages" of acquiring the Hilton Seattle and expected to be able to start paying investors their owed interest payments beginning on November 1, 2020.  (Compl., ¶ 25; Chen Decl., ¶¶ 11-12, Exh. C.)

Yet, the acquisition never occurred.  (Compl., ¶ 25.)  All monies deposited in the escrow account totaled $5,800,000 from January through October 2020.  (Garcia Decl., ¶ 27, Exh. D.)  But, by October 14, 2020, all those funds were released to the seller and no further transactions occurred.  (*Id*.)  Indeed, FAT alleges it no longer holds any funds for UC Seattle.  (*Id*.; *see also* Garcia Decl., ¶ 28, Exh. E.)

On February 17, 2021, Plaintiff gave Defendants written notice to terminate the SA and IA and demanded her $300,000 investment back and payment of guaranteed preferred returns.  (Compl., ¶ 37; Chen Decl., ¶¶ 16-17, Exh. E.)

**F.  Defendants Fail to Return Plaintiff's Investment Funds or Provide Guaranteed Preferred Returns While Possessing Plaintiff's Investment**

Over the course of the following six (6) months, Plaintiff engaged in numerous phone calls with and Zoom meetings led by Howard Wu, as outlined in the Complaint and Chen Declaration, in which Wu made the following representations:

1.  At first, Wu represented that the Hilton Seattle acquisition would close in March or April 2021, but later said it would be closer to September or October 2021.  (Compl., ¶¶ 38, 41; Chen Decl., ¶¶ 20, 24, 34, 40, Exhs. G, L.)

2.  There was no financial contingency in place because it was not standard practice "at this level," so walking away from the deal would result in all investors losing $6 million down payment.  The only way to get their money back would be to

sue the seller.  (Compl., ¶¶ 38, 41; Chen Decl., ¶¶ 20, 24, 33, 35, 37, 40, Exhs. G, L.)

3.     Wu refused to provide Plaintiff with financial statements related to the acquisition, bank account or escrow statements, or any proof of investment.  (Compl., ¶¶ 38, 41; Chen Decl., ¶¶ 20, 22, 24, 35, 37, 40, Exhs. G, L.)

4.     Wu refused to state whether Plaintiff would get her investment back or to commit to paying guaranteed preferred returns pursuant to the IA, despite representing to Plaintiff on April 14, 2021 that UC Seattle would "accumulate missing interest payments and resume paying after July 1st, 2021."  (Compl., ¶ 39, 40, 42; Chen Decl., ¶¶ 25, 27, 41, Exh. H.)  But Wu repeatedly represented he and Woods were discussing whether to return investment funds or pay guaranteed preferred returns.  (Compl., ¶¶ 40-42; Chen Decl., ¶¶ 27, 34, 40, 41, Exh. L.)

5.     On an August 28, 2021 Zoom call with UC Seattle investors, ***Wu admitted Defendants used their investment money to fund other Urban Commons projects***, and stated the only way to get investors' money back was to sue the seller, and if the investors sued the seller, they would lose all their investment money and just pay more to lawyers.  (Compl., ¶ 41; Chen Decl., ¶¶ 33, 40, Exh. L.)  Wu encouraged investors to stay the course and assured the deal would close.  (*Id.*)

Thereafter, on September 7, 2021, Plaintiff once again attempted to talk to Wu about receiving her investment funds back, but Wu told Plaintiff he was "too busy" to talk to her.  (Compl., ¶ 42; Chen Decl., ¶ 41.)  Thus, to date, (i) neither Woods nor Wu has provided Plaintiff with any answer about receiving guaranteed preferred return payments on her investment or a return of her investment funds; and (ii) Plaintiff has not received the investment funds she demanded back.  (Compl., ¶ 43.)

In sum, Defendants misrepresented and omitted material facts concerning: **(a)** Woods and Wu's credentials, expertise, experience, and capabilities to induce Plaintiff's trust and confidence (Compl., ¶¶ 30-34, 36; RJN, Exh. 1); **(b)** the default by EagleHT and acceleration thereafter of its $341 Million loan (Compl., ¶¶ 31, 34, 36; RJN Exh. 1); **(c)** the completion date for the UC Seattle Offering, that Urban

Commons was the buyer pursuant to the PSA, and when the Hilton Seattle would be sold to EagleHT (*id.*, ¶¶ 30, 34, 36; SA, p. 1; *see also* Chen Decl., ¶ 30, Exh. J); **(d)** the raising of necessary funds from the offering of membership interests in order to purchase the Hilton Seattle (Compl., ¶¶ 22-25, 36, 38-41; Chen Decl., ¶¶ 11-12, 18-40, Exhs. C, F-L); **(e)** Plaintiff's investment status, the Hilton Seattle acquisition, and the escrow account allegedly holding Plaintiff's investment (Compl., ¶ 36; Chen Decl., ¶¶ 10-12, 15, 18-40, Exhs. C, F-L; Garcia Decl., ¶¶ 28, 29; Exhs. D, E); and **(f)** the guaranteed preferred returns Plaintiff would receive under the IA (Compl., ¶¶ 27-29, 36, 38-41; Chen Decl., ¶¶ 8-9, 13-14, 18-40 (Exhs. B-D, F-L).

## III.   RELEVANT PROCEDURAL HISTORY

On November 10, 2021, Plaintiff filed the Complaint alleging 22 causes of action against Defendants Woods, Wu, and UC Seattle. (Dkt. No. 1, Compl.)[3]

### A.   Service of Summons and Complaint

Pursuant to Fed. R. Civ. P. 4(e)(2), Plaintiff properly served Woods and Wu, who each failed to answer or move against the complaint within 21 days of service, as required by Fed. R. Civ. P. 12(a)(1)(A)(i).   (Garcia Decl., ¶¶ 4-7; *see also* Dkt. Nos. 12, 13.)  Neither Woods nor Wu has appeared or responded to the complaint.

Plaintiff caused the summons and complaint to be served on UC Seattle by personal service on Wu, a managing member of Urban Commons, which is the sole manager of UC Seattle, pursuant to Fed. R. Civ. P. 4(e)(1), (h)(1)(A), h(1)(B), and UC Seattle failed to answer or move against the complaint within 21 days of service, as required by Fed. R. Civ. P. 12(a)(1)(A)(i).  (Garcia Decl., ¶¶ 9-12, Exh. A; *see also* Dkt. No. 14.)  UC Seattle has not appeared or otherwise responded to the complaint.

### B.   Plaintiff Properly Served UC Seattle by Personally Serving Wu.

Under Rule 4, a corporation or limited liability company may be served by

---

[3] The Complaint also named defendants Wu Development, LLC and Annie Wu, who have each since been dismissed from this action without prejudice.  (*See* Dkt. Nos. 27 and 33, respectively.)

delivering a copy of the summons and of the complaint to an officer, a managing or general agent.  Fed. R. Civ. P. 4(h)(1)(B). In addition, service on a corporation or limited liability company may be made in accordance with state law.  Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  Under Cal. Code Civ. P. §416.10, a corporation may be served by delivering a copy of the summons and complaint to a person designed as agent for service of process or other specified persons associated with the corporation, including a general manager or a person authorized by the corporation to receive service of process.  Cal. Code Civ. P. § 416.10(a), (b).  A "general manager" includes "any agent of the corporation 'of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.'"  *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1226 (C.D. Cal. 2008) (quoting *Gibble v. Car–Lene Research, Inc.*, 67 Cal. App. 4th 295, 313 (1998)).

UC Seattle was properly served with the summons and complaint when Plaintiff personally served Wu as managing member of Urban Commons, sole manager of UC Seattle, pursuant to Fed. R. Civ. P. 4(h)(1)(B).  And, under California law, as managing member of Urban Commons, sole manager of UC Seattle, Wu qualifies as a general manager pursuant to Cal. Code Civ. P. § 416.10(a), (b).

**C.    First Entry of Default and Motion for Default Judgment**

Plaintiff previously requested the Clerk to enter default and moved to enter default judgment against Woods, UC Seattle, and Wu Development.  (*See* Dkt. Nos. 17, 18, 21.)  At the time, Plaintiff did not move for default judgment against Wu, as an automatic bankruptcy stay existed as to Wu (U.S. Bankruptcy Court for Central District of California, Los Angeles Division, Case No. 2:21-bk-19480-ER).  (*See* Dkt. No. 20.)  On May 2, 2022, the bankruptcy court granted Plaintiff's Motion for Relief from the Automatic Stay and the bankruptcy stay as to Wu was lifted.  (Dkt. No. 25.)

On July 22, 2022, the Court denied Plaintiff's Motion for Default Judgment without prejudice.  (Dkt. No. 26.)  Regarding UC Seattle and Wu Development, the Court stated that "Plaintiff has not adequately demonstrated that it properly served

UC Seattle or Wu Development, LLC[,]" and vacated the default as to these defendants. (*Id.*, at 6, 8.) The Court also found that "Plaintiff failed to satisfy the second and third *Eitel* factors" as to Woods. (*Id.*, at 6.) In addition, the Court found it "improper to enter default judgment as to only some defendants." (*Id.*, at 8.)

### D. Current Entry of Default Against Defendants

On June 30, 2022, an involuntary petition under Chapter 7 was filed against Woods in the U.S. Bankruptcy Court for the Central District of California, Los Angeles Division, in Case No. 2:22-bk-13613-ER. (Garcia Decl., ¶ 13.)

On September 29, 2022, Plaintiff requested the Clerk of this Court to enter default against Wu and UC Seattle, which the Clerk entered on October 3, 2022. (Dkt. Nos. 28, 30.) On October 26, 2022, the bankruptcy court granted Plaintiff's Motion for Relief from the Automatic Stay, lifting the bankruptcy stay as to Woods. (Dkt. No. 31.) On December 20, 2022, Plaintiff requested the Clerk to enter default against Woods, which the Clerk entered on December 21, 2022. (Dkt. Nos. 32, 35.)

On January 12, 2023, the Court ordered Plaintiff to show cause why this action should not be dismissed for lack of prosecution or file a Motion for Entry of Default Judgment. (Dkt. No. 36.) Accordingly, Plaintiff files the instant Motion.

## IV. LEGAL STANDARD ON MOTION FOR DEFAULT JUDGMENT

Under Fed. R. Civ. P. 55(b)(2), the Court may enter default judgment when a party fails to plead or defend a case. On entry of default, well-pled allegations in the complaint regarding liability are generally deemed admitted. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007). The entry of default judgment is further justified when a party fails to timely respond to a properly-served complaint. *Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1986). The entry of a default judgment is left to the Court's sound discretion. *PepsiCo. Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999), citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Court considers several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the

merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The moving party may submit declarations and affidavits in support of the default judgment request.  *See* L.R. 55-2; *see also Board of Trs. of the Sheet Metal Workers' Pension Plan of S. Cal. v. Westway Constr., Inc.*, No. 09-CV-7023-GAF-FMO, 2010 WL 11596465, at *1 (C.D. Cal. Feb. 26, 2010) ("Along with the complaint, the court may look to affidavits and declarations to determine whether default judgment is appropriate.").  "In applying this discretionary standard, default judgments are more often granted than denied." *Triunfo-Mex*, 189 F.R.D. at 432.

## V.    PLAINTIFF SATISFIES THE PROCEDURAL REQUIREMENTS FOR DEFAULT JUDGMENT.

In ruling on a motion for entry of default judgment, the district court must first determine whether the motion complies with Fed. R. Civ. P. 55(a) and L.R. 55-1 and 55-2.  *See PepsiCo, Inc. v. Cal. Sec. Cans* ("*PepsiCo*"), 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  Service of the Motion on a defaulting party is required only if the party has appeared in the action (*Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n. 19 (C.D. Cal. 2010)), or, under L.R. 55-2, if the amount claimed in a judgment by default is unliquidated.

Plaintiff satisfies the requirements of Fed. R. Civ. P. 55(a) and L.R. 55-1.  As set forth in the Garcia Decl., (1) Plaintiff has completed service on each of the Defendants with service of the Summons and Complaint; (2) none of Defendants Woods, Wu, or UC Seattle have appeared in this action and none of these Defendants responded to the Complaint within the time period permitted by Fed. R. Civ. P. 12; (3) Plaintiff caused the Clerk to enter defaults against Defendants Woods, Wu, and UC Seattle for their failure to answer the Complaint; (4) neither Woods, Wu, nor UC

Seattle are minors or incompetent persons; (5) none of Woods, Wu, or UC Seattle are in the military service or otherwise exempt under the Servicemembers Civil Relief Act (50 U.S.C. App. §521).  (Garcia Decl., ¶¶ 4-20.)  Pursuant to L.R. 55-2, Plaintiff will submit a proof of service of this Motion on each Defendant. (Garcia Decl., ¶ 21.)

## VI.   THE *EITEL* FACTORS FAVOR ENTRY OF DEFAULT JUDGMENT.

### A.   Plaintiff Would Be Prejudiced Without Entry of Default Judgment.

The possibility of prejudice exists where "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. at 1177; *see also Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery.").  Here, absent default judgment, Plaintiff has no other means to recover her investment, as Defendants have not appeared in this case at all.  *See Landstar*, 725 F. Supp. 2d at 924 (default judgment granted due to lack of other remedy); *see also Kerr Corp. v. Tri Dental, Inc.*, No. 12-CV-891-DOC-CW, 2013 WL 990532, at *3 (C.D. Cal. Mar. 11, 2013) ("Defendants' past misconduct and current failure to litigate this case indicate that it is highly unlikely to correct past misbehavior or otherwise compensate Plaintiffs without a default judgment by the Court.").

Importantly, Woods and Wu have already been declared "fraudsters" by U.S. Bankruptcy Court Judge Christopher S. Sontchi from the District of Delaware *in In re EHT US1, Inc.*, 633 B.R. 223 (Bankr. D. Del., Nov. 15, 2021).  (RJN, Exh. 2.)  In his opinion, Judge Sontchi stated: "Messrs. Woods and Wu are fraudsters. They fraudulently obtained a PPP loan on behalf of the Debtor without authority and absconded with the proceeds… Defendants… have baldly stated they intend to dissipate their assets."  *In re EHT US1, Inc*., 633 B.R. at 225.  Judge Sontchi's opinion was issued just five (5) days after Plaintiff filed her Complaint on November 10, 2021.  During a Zoom call earlier that year on March 8, 2021, Wu told UC Seattle investors they could apply for a Paycheck Protection Program ("PPP") loan, even

though the Hilton Seattle deal had not closed and UC Seattle has not purchased the property, because according to Wu, PPP loans purportedly do not require ownership. (Compl., ¶ 38; Chen Decl., ¶¶ 21, 24, Exh. G.)  Further, based on Defendants' continued pattern of fraud and dissipating assets, it is important that Plaintiff recover from Defendants, jointly and severally, while she can.

## B.      Plaintiff Has Demonstrated the Merits of Her Claims.

The second and third *Eitel* factors are often analyzed together.  *PepsiCo*, 238 F. Supp. 2d at 1175 ("The Ninth Circuit has suggested that these two factors require that a plaintiff state a claim on which the [plaintiff] may recover." (internal citations and quotation marks omitted).).  For the purpose of default, all well-pleaded allegations in the complaint relating to liability are assumed to be true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also Acceptance Indem. Ins. Co. v. Bray*, No. 18-CV-2996-RGK-FFM, 2018 WL 6017017, at *2 (C.D. Cal. July 26, 2018).  Additionally, a defendant's liability is conclusively established and all factual allegations of the complaint, except those relating to damages, are assumed to be true.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## 1.  Securities Act §12 (2nd Cause of Action)

*First*, Securities Act §12(a)(1) (15 U.S.C. §77l(a)(1)) creates a private right of action against any person who "offers or sells a security in violation of" Securities Act §5 (15 U.S.C. §77e). Securities Act §5 prohibits the offer or sale of unregistered securities.  *Id.*  "The linchpin of the [Securities] Act is its registration requirement." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S.Ct. 1318, 1323 (2015).  Due to the innumerable ways in which investors are likely to be manipulated and harmed absent the protections of the federal securities laws, Securities Act §§5 and 12(a)(1) provide for strict liability against any person who offers or sells an unregistered security.  *See Pinter v. Dahl*, 486 U.S. 622, 638 (1988).

Here, and as alleged in the Complaint, the UC Seattle Offering was a sale of securities under controlling federal law.  *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293,

298-99 (1946).   Under the test established by the Supreme Court in *Howey*, an offering is an investment contract security where there is "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits to be produced by the efforts of others." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (citation omitted).   There is no question here that Plaintiff invested $300,000 for a 1% membership interest in UC Seattle, a common enterprise, with the expectation of profits solely dependent on the entrepreneurial and/or managerial efforts of others, specifically Defendants timely completing the UC Seattle offering and acquiring and/or refurbishing the Hilton Seattle.  (Compl., ¶¶ 17, 19-22; SA, p. 1.)  Further, the securities were never registered for public sale with the SEC.  (Compl., ¶ 29.)  Thus, Defendants engaged in the sale of unregistered securities in violation of the Securities Act and are strictly liable to Plaintiff.

*Second*, Securities Act §12(a)(2) (15 U.S.C. §77l(a)(2)) imposes civil liability on any person who offers or sells a security by means of a prospectus or oral communication that includes "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading…" *Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006, 1028-29 (9th Cir. 2005) (citing 15 U.S.C. § 77l(a)(2)). "To establish liability under section 12(a)(2), a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." *Id*., at 1029 (citing *Pinter*, 486 U.S. at 647).

Here, and as alleged in the Complaint, Defendants made various material misrepresentations and omissions concerning: (a) Woods and Wu's credentials, expertise, experience, and capabilities to induce the trust and confidence of Plaintiffs and other investors (Compl., ¶¶ 30-34, 36; RJN, Exh. 1); (b) the default by EagleHT and acceleration thereafter of its $341 Million loan (Compl., ¶¶ 31, 34, 36; RJN Exh. 1); (c) the completion date for the UC Seattle Offering, that Urban Commons was the

buyer pursuant to the PSA, and the dates on which the Hilton Seattle would be sold to EagleHT (*id.*, ¶¶ 30, 34, 36; SA, p. 1; *see also* Chen Decl., ¶ 30, Exh. J); (d) the raising of necessary funds from the offering of membership interests in order to purchase the Hilton Seattle (Compl., ¶¶ 22-25, 36, 38-41; Chen Decl., ¶¶ 11-12, 18-40, Exhs. C, F-L); (e) the status of Plaintiff's investment, the acquisition of the Hilton Seattle, and the escrow account allegedly holding Plaintiff's investment (Compl., ¶¶ 36; Chen Decl., ¶¶ 10-12, 15, 18-40, Exhs. C, F-L; Garcia Decl., ¶¶ 27, 28; Exhs. D, E); and (f) the guaranteed preferred returns Plaintiff would receive under the IA (Compl., ¶¶ 27-29, 36, 38-41; Chen Decl., ¶¶ 8-9, 13-14, 18-40 (Exhs. B-D, F-L).

Moreover, Defendants knew they were in default as the master lessee of EagleHT's $341 million facilities loan and later admitted that Urban Commons decided to use Plaintiff's investment funds for other Urban Commons projects since the Hilton Seattle acquisition was going nowhere.  (Compl., ¶¶ 19, 41; Chen Decl., ¶¶ 33, 40, Exh. L.)  In addition, by the time Defendants solicited Plaintiff's membership interest in UC Seattle, Defendants had already deposited investment funds in a non-refundable escrow account and had already begun releasing investment funds to the seller.  (Compl., ¶¶ 20, 40; Garcia Decl., ¶ 27, Exh. D.)  Accordingly, Defendants are liable to Plaintiff for violations of Securities Act §12(a)(2).

### 2.   Cal. Corp. Code §25110 (9th Cause of Action)

Like Securities Act §12(a)(1), Cal. Corp. Code §25110 restricts the offer or sale of unregistered securities.  Under California law, an investment contract is a security.  Cal. Corp. Code §25019.  As discussed above, the security, namely, the membership interest in UC Seattle, was unregistered and not except from registration or qualification, so its sale violated Cal. Corp. Code §25110.  (Compl., ¶¶ 29, 92, 93.)

### 3.   Cal. Corp. Code §§25400, 25401 (6th, 7th Causes of Action)

Like Securities Act §12(a)(2), under Cal. Corp. Code §25401 it is unlawful to sell a security in California "by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact

necessary in order to make the statements made, in the light of the circumstances under which the statements were made, not misleading."  Notably, Cal. Corp. Code §25401 does not require any intent to deceive.  *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 WL 3590984, at *27 (N.D. Cal. Dec. 30, 2005).  Under Cal. Corp. Code §25501, a private plaintiff may bring an action for violations of Cal. Corp. Code §25401 and seek either rescission or damages.  Under Cal. Corp. Code §25400, it is unlawful to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it made, false or misleading with respect to any material fact… and which he knew or had reasonable ground to believe was so false or misleading."  Cal. Corp. Code §25500 authorizes a private right of action for violations of Cal. Corp. Code §25400.

Here, as discussed above in Section VI.B.1., Defendants sold to Plaintiff the membership interest in UC Seattle via written misrepresentations and omissions, which under the circumstances, were false or misleading, and Defendants knew or had reasonable ground to know were false or misleading.  (Compl., ¶¶ 77, 84.) Accordingly, Defendants violated Cal. Corp. Code §§25400 and 25401 and are liable to Plaintiff under Cal. Corp. Code §§25500 and 25501, respectively.

### 4.    <u>Securities Act §15 (3rd Cause of Action)</u>

Under Securities Act §15(a), every person who controls any person liable under Securities Act §11 or §12 "shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."  15 U.S.C. §77o(a).  "To establish that someone is a 'controlling person' the complainant must show that there was a relationship between the controlling and controlled person and that actual power or influence was exerted over the alleged controlled person."  *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987).  Section 15(a), therefore, "imposes joint and several liability upon every person who controls any person liable under §11 or §12… Thus, violation of §15(a)

is predicated upon violation of §11 or §12." *In re Metricom Sec. Litig.*, No. C 01-4085 PJH, 2004 WL 966291, at *9 (N.D. Cal. Apr. 29, 2004).

Here, and as alleged in the Complaint, due to their ownership interest in and/or role in managing UC Seattle and conducting its functions, Woods and Wu acted as controlling persons within the meaning of Section 15(a) of the Securities Act as alleged herein.   (Compl., ¶ 58.)   By virtue of their positions as owners and/or managers of Urban Commons and participation in and/or awareness of UC Seattle's operations, Woods and Wu had the power and control, and did influence and control, directly or indirectly, the decision making relating to the UC Seattle Offering, including the decision to engage in the sale of unregistered securities via the UC Seattle Offering, as discussed in Section VI.B.1, *supra*.  (*Id.*, ¶¶ 16, 40-41; SA, p. 1, 6; *see also* Chen Decl., ¶ 28-29, Exh. J.)   Therefore, Woods and Wu are liable to Plaintiff as control persons of UC Seattle under Securities Act §15(a).

### 5. <u>Cal. Corp. Code §§ 25504, 25401, 25504.1 (10th, 11th Cause of Action)</u>

Like Securities Act §15, Cal. Corp. Code §25504 provides: "[e]very person who directly or indirectly controls a person liable under Section 25501 or 25503, …every principal executive officer or director of a corporation so liable, … are also liable jointly and severally with and to the same extent as such person…"  Cal. Corp. Code §25504.1 provides: "[a]ny person who materially assists in any violation of Section … 25401… with the intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation.

As discussed above in Section VI.B.4., Woods and Wu directly and indirectly controlled UC Seattle as managing members of Urban Commons and materially aided and abetted in the violation by UC Seattle, namely, the misrepresentations and omissions intended to defraud Plaintiff contained in the SA delivered to Plaintiff, which are outlined in Section VI.B.1, *supra*.  (Compl., ¶¶ 102-104; 106-109.)  Woods and Wu knowingly intended that Plaintiff would rely on the misrepresentations and would pay Defendants for securities in UC Seattle.  (*Id.*, ¶¶ 110-111.)  Thus, Plaintiff

is entitled to recover damages and other relief under Cal. Corp. Code §25504.1.

### 6.   Securities Exchange Act §10(b) & Rule 10b-5 (5th Cause of Action)

Plaintiff has an implied private right of action under Securities Exchange Act §10(b) (15 U.S.C. §78j(b)).   *See*, *e.g.*, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1581 n.5 (9th Cir. 1990), citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976).   Section 10(b) and Rule 10b-5 thereunder (17 C.F.R. §240.10b-5) prohibit fraud in connection with the purchase or sale of any security.   *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855 n.2 (9th Cir. 2001).   Although §10(b) and Rule 10b-5 require that defendants acted with scienter, the requisite state of mind may be established by a showing of recklessness.   *Hollinger*, 914 F.2d at 1568-69 ("[A] reckless omission of material facts upon which the plaintiff put justifiable reliance in connection with a sale or purchase of securities is actionable under Section 10(b).").   "Fraud touching the intrinsic value of securities and the means of accomplishing the purchase of securities is sufficiently connected with securities transactions to bring the fraud within section 10(b)."   *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993).   To prevail on a private right of action under §10(b) and Rule 10b-5, Plaintiff need only show: (1) material misrepresentation or omission by Defendants; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; and (5) damages.   *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975).   Each of these elements is satisfied.

*First*, Defendants knowingly made misrepresentations and omissions to Plaintiff, as discussed in Section VI.B.1., *supra*.   (Compl., ¶ 65.)   *Second*, Defendants had actual knowledge of the misrepresentations and omissions of material facts or acted recklessly with deliberate disregard for the truth.   (*Id*.)   *Third*, based on Defendants' misrepresentations and omissions, Plaintiff was induced to invest $300,000 in UC Seattle, which, as established in Section VI.B.1., *supra*, is a security. (Compl., ¶ 66.)   *Fourth*, Plaintiff reasonably and justifiably relied upon the representations, promises, and other statements, communications, and conduct by

Defendants in investing in UC Seattle. (Compl., ¶ 67.) Plaintiff was ignorant of, and Defendants concealed and did not disclose to Plaintiff, material facts which were necessary to prevent the fraud on Plaintiff. (*Id.*, ¶ 68.) *Fifth*, as a result of such justifiable reliance on Defendants' omissions and misrepresentations, Plaintiff suffered losses, namely, her $300,000 investment in UC Seattle. (*Id.*, ¶¶ 70-72.)

### 7. Cal. Corp. Code §§25200 *et seq.* & 25501.5 (12th Cause of Action)

California law authorizes an action for rescission and/or damages, and an award of attorney's fees and costs, by any person who purchased a security from or sells a security to a broker-dealer that is required to be licensed but is not. *See* Cal. Corp. Code §25501.5. At the time of the solicitation, offer, and sale of the securities in UC Seattle to Plaintiff, none of the Defendants were licensed as securities broker-dealer(s) as required by Part 3 of Cal. Corp. Code §25200 *et seq*. (Compl., ¶ 117.)

### 8. Breach of Contract (13th Cause of Action)

The elements of a claim for breach of contract are (1) existence of a contract; (2) performance by the plaintiff or excuse for non-performance; (3) breach by the defendant; and (4) damage to the plaintiff as a result of defendant's breach. *Landstar*, 725 F. Supp. 2d at 920. Plaintiff entered into valid and enforceable contracts with Defendants, namely, the SA and IA. (Compl., ¶¶ 125.) Plaintiff complied with her obligations, performed to the extent performance was due, and all conditions required for performance were satisfied. (*Id.*, ¶¶ 126.) Despite Plaintiff's performance, Defendants materially breached the SA. (*Id.*, ¶ 127; Chen Decl., ¶¶ 33, 40, Exh. L; Garcia Decl., ¶¶ 28, 29, Exhs. D, E.) Defendants also breached the IA by failing to pay to Plaintiff any Preferred Returns due and owed after November 4, 2020. (Compl., ¶ 128; Chen Decl., ¶¶ 8-9, 13-14, 18-40, Exhs. B (IA, § 1), D, F-L.) Each material breach directly and proximately caused Plaintiff to suffer damages. (Compl., ¶ 129.) Accordingly, Plaintiff is entitled to default judgment. *Landstar*, 725 F. Supp. 2d at 921 (entering default on breach of contract action).

### 9.     Cal. Penal Code §496(c) (14th Cause of Action)

To prevail under Cal. Penal Code §496, Plaintiff must prove that Defendants knowingly received property obtained through theft or extortion, or sold, withheld, concealed, or aided in concealing, stolen property from the owner.  Cal. Penal Code §496(a).  "Any person who has been injured by a violation of subdivision (a) … may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."  Cal. Penal Code §496(c).

Woods and Wu fraudulently converted and used Plaintiff's property for their own benefit, with intent to deprive Plaintiff of use of her property.  Defendants deceived Plaintiff through misrepresentations and omissions in the SA and IA to induce her to purchase a membership interest in UC Seattle. (*See* Section VI.B.1, *supra*.)  Even after Plaintiff sought to terminate her membership interest, Defendants Woods and Wu were in indefinite discussions as to whether to return her $300,000 investment. (Compl. ¶¶ 40-42.) Furthermore, Defendants repeatedly tried to use their "imminent" closing on the Hilton Seattle acquisition to maintain possession of Plaintiff's investment even after the UC Seattle Offering failed to complete by July 10, 2020, stating that the acquisition would be completed by the end of October 2020, then March or April 2021, then September or October 2021.  (*Id.*, ¶¶ 25, 38, 41; Chen Decl., ¶¶ 11-12, 20, 24, 33-34, 40, Exhs. C, G, L.)

### 10.     Fraud (15th – 18th Cause of Action)

The elements of fraud are (1) misrepresentation; (2) scienter; (3) intent to defraud and induce reliance; (4) justifiable reliance; and (5) damages.  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract."  *Id*.

Here, Defendants fraudulently induced Plaintiff, through misrepresentations and omissions in the SA and IA, to purchase a membership interest in UC Seattle. (*See* Section VI.B.1, *supra*; *see also* Compl., ¶¶ 139, 140, 147, 154, 162, 163.)  These promises were made without intent to perform and with intent to deceive, evidenced

by Defendant's failure to deposit Plaintiff's investment in the Hilton Seattle escrow account, which itself was not an interest-bearing secure account, Defendants' release of escrow funds to the seller before raising the purchase price, and Defendants' failure to deliver any guaranteed preferred returns to Plaintiff after a single quarter even though they kept possession of Plaintiff's investment, as well as their refusal to provide Plaintiff with any documentation as to their use of her funds. (Compl., ¶¶ 148, 149, 156, 164.)   Plaintiff reasonably and justifiably relied on Defendants' promises, misrepresentations, concealments, and omissions as she had no reason to suspect Defendants would defraud her, based on the representations in the SA and IA. (Compl., ¶ 141-142, 150, 155, 157, 158, 165, 167.) As a result of Defendants' fraudulent acts, Plaintiff invested $300,000 and received nothing in return. (Compl., ¶ 143, 151, 159, 166.)  Thus, Plaintiff has been damaged in the amount of $300,000 plus the amount of guaranteed preferred returns not paid, which equals $40,500.

## 11.   Cal. Bus. & Prof. Code §17200 *et seq.* (22nd Cause of Action)

The facts that support the securities and common law fraud claims adequately support a claim under the "unlawful" and "fraudulent" prongs of California's Unfair Competition Law.   "Section 17200 provides a private cause of action for any 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." *Local TV, LLC v. Super. Ct.*, 3 Cal. App. 5th 1, 13 (2016). "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1120 (C.D. Cal. 2001), citing *People v. McKale*, 25 Cal. 3d 626, 632 (1979). "[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Local TV*, 3 Cal. App. 5th at 14.  As discussed herein, Plaintiff's Complaint adequately alleges that Defendants violation §§12 and 15 of the Securities Act, Section 10(b) and Rule 10b-5 of the Securities Exchange Act, and Cal. Corp. Code §§ 25110, 25200, 25400,

25401, 25501, 25501.5, 25504, and 25504.1.   In addition, Defendants' conduct caused substantial injury to Plaintiff, who has been defrauded out of her entire $300,000 investment, which was her retirement savings (Chen Decl., ¶ 44), as a result of Defendants' unlawful and fraudulent conduct.  (Compl., ¶ 190.)

## C.  The Damages Sought Are Proportionate to the Defendants' Conduct.

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo*, 238 F. Supp. 2d at 1176.  Defendants egregiously and unlawfully violated federal and California securities laws, breached contractual agreements, engaged in fraud, utilized unethical business practices, and refused to participate in this action.  The gravity of Defendants' misconduct and Plaintiff's resulting harm justify the requested damages.

## D.  There is No Possibility of Disputed Material Facts.

The fifth *Eitel* factor considers the possibility of a dispute as to any material facts in the case.  Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.  *TeleVideo Sys.*, 826 F.2d at 917-18. Where the complaint is well-pled and defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar*, 725 F. Supp. 2d at 921-22. The Complaint's allegations establish that Defendants committed fraud and violated federal and California securities laws, among others.  Once litigated, those allegations would be supported by substantial evidence, as clearly demonstrated by Mrs. Chen's affidavit submitted herewith, which sets forth her damages.  Defendants, who have not appeared in this action, would not be able to refute this clear evidence supporting Plaintiff's allegations.  Indeed, Defendants have made no attempt to challenge the accuracy of the allegations in the Complaint.  As such, there should be no factual dispute precluding entry of default judgment.  *Landstar*, 725 F. Supp. 2d at 921-22.

## E.  Defendants' Default Was Not Due to Excusable Neglect.

The sixth *Eitel* factor considers whether Defendants' default may have resulted from excusable neglect.  This factor favors default judgment when the defendant has

been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012); *see also Xerox Corp. v. Am. Mail Ctrs., Inc.*, No. 16-CV-42-DOC-KES, 2016 WL 10835982, at *4 (C.D. Cal. Jul. 20, 2016) ("where the defendants were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion, this factor favors entry of default judgment.").

Here, Defendants' default was not caused by excusable neglect as they were each properly served in November 2021. (*See* Garcia Decl., ¶¶ 4, 6, 8-11; Dkt. Nos. 12, 13, 14.) Defendants were served by personal service on each of Woods and Wu, so there is no question that Defendants are aware of the lawsuit's existence. (*See id.*)

## F.    The Policy of Favoring Decisions on the Merits Not Dispositive.

The seventh *Eitel* factor recognizes the federal policy favoring disposition of cases on their merits "whenever reasonably possible." *See Eitel*, 782 F.2d at 1472. Nevertheless, "this preference, standing alone, is not dispositive," and thus "the preference to decide cases on the merits does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, a party's failure to answer a pleading "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Since Defendants did not appear in this action, a dispositive decision on the merits is impossible. Therefore, the seventh *Eitel* factor should not preclude the Court from entering a default judgment against Defendants.

## VII.  <u>PLAINTIFF IS ENTITLED TO THE REQUESTED DAMAGES</u>

In assessing the appropriate amount of damages on default judgment, the Court does not presume the truth of any factual allegations related to the damages amount. *TeleVideo Sys.*, 826 F.2d at 917-18. Thus, Plaintiff must prove all damages sought in the complaint, and the Court must ensure the amount is reasonable and demonstrated by the evidence through testimony or written affidavit. *Id.*; Fed. R. Civ. P. 55(b).

**<u>Compensatory Damages</u>** – Plaintiff is entitled to $340,500 in compensatory damages under the 2nd, 3rd, 5th, 6th, 7th, 9th, 10th 11th, 12th, 13th, and 14th causes of

action, constituting (1) her $300,000 investment in UC Seattle that was to be returned to her upon her termination or UC Seattle's failure to acquire the Hilton Seattle, plus (2) nine (9) payments of $4,500, or $40,500, which are the guaranteed preferred returns for the nine (9) completed calendar quarters she has not received payment, even though Defendants maintain possession of her investment, through the date of filing this Motion.  (SA, p. 1; Chen Decl., ¶¶ 4-9, 13-14, Exhs. A, B (IA), D.)

**Restitution and Consequential Damages** – Plaintiff is entitled to restitution of benefits, including the return of Plaintiff's investment, and consequential damages under the 15th-18th causes of action, and to restitutionary disgorgement under the 22nd cause of action.  Plaintiff seeks restitution, consequential damages, and restitutionary disgorgement under these causes of action, in the amount of $340,500, in the alternative to compensatory damages, to avoid double recovery.

**Exemplary Damages** – Plaintiff is entitled to treble damages under Cal. Penal Code §496(c) (14th cause of action), which allows for "three times the amount of actual damages."  Plaintiff is also entitled to punitive damages under Cal. Civ. Code § 3294 (15th – 18th causes of action).  California courts have held that tort damages are allowed where a contract was fraudulently induced.  *See Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999) (citing *Las Palmas Assocs. v. Las Palmas Ctr. Assocs*., 235 Cal. App. 3d 1220, 1238-39 (1991) (finding tort recovery available where jury could have found sellers misrepresented intent to honor guaranties to induce buyers into consummating sale)). "[N]o public policy is served by permitting a party who never intended to fulfill his obligations to fraudulently induce another to enter into an agreement… 'Although punitive damages may not ordinarily be given for breach of contract… such damages may be awarded where a defendant fraudulently induces the plaintiff to enter into a contract.'"  *Las Palmas*, 235 Cal. App. 3d at 1238-39 (citations omitted). Thus, Plaintiff seeks $1,021,500 in exemplary damages based on Defendants' theft and fraud, at three times Plaintiff's damages, and any other exemplary damages the Court may deem appropriate under all causes of action.

**Pre-Judgment Interest** – Under California law, Plaintiff is entitled to pre-judgment interest on her claims.  Cal. Civ. Code § 3289(b) provides: "If a contract… does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."  Courts may award prejudgment interest on contract claims where damages are certain or are "capable of being made certain by calculation." Cal. Civ. Code § 3287(a); *Cumbie v. Tibbles*, No. 2:21-CV-01090 JAM AC, 2022 WL 17830255, at *8 (E.D. Cal. Dec. 21, 2022).  Accordingly, Plaintiff seeks prejudgment interest of $40,674.44, running from November 10, 2021, the filing date of the Complaint, through January 19, 2023, the filing date of this Motion, and increasing by $93.29 per day thereafter, through judgment.  (Garcia Decl., ¶ 29.)

Alternatively, Plaintiff seeks pre-judgment interest on her fraud claims at a rate of 7 percent per annum.  Cal. Civ. Code §3287.  In "every case of oppression, fraud, or malice," an award of prejudgment interest rests in the trial court's sound discretion.  Cal. Civ. Code § 3288; *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 820 (9th Cir. 2008).  In a case of fraud, a prejudgment interest award is necessary to put the plaintiff in a position that she would have been in, had the fraud not occurred.  *Nordahl v. State of Cal. Dep't of Real Estate*, 48 Cal. App. 3d 657, 665 (1975).

**Attorney's Fees** – Plaintiff is entitled to recover her reasonable attorney's fees and costs under § 12 of the SA, Cal. Penal Code §496(c), and Cal. Corp. Code §25501.5(b).  Plaintiff is also entitled to her costs as the prevailing party.  15 U.S.C. §1117(a); Fed. R. Civ. P. 54(d)(1) ("[unless a federal statute, these rules, or a court order provides otherwise, costs… should be allowed to the prevailing party.").

Plaintiff is further entitled to recover her reasonable attorney's fees, because (1) the Complaint's allegations, which are accepted as true, allege Defendants' intentional and willful misconduct; and (2) Defendants failed to appear and disregarded this litigation.  Compl., *generally*; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (upholding award of attorney's fees because, "by entry of default judgment, the district court determined, as alleged in [plaintiff's]

complaint, that [defendants'] acts were committed knowingly, maliciously, and oppressively, and with an intent to… injure [plaintiffs].")*; Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291-1292 (C.D. Cal. Sep. 17, 2001) ("a case may be considered exceptional where the defendants disregard the proceedings and do not appear.")*; Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("because the defendant has failed to appear, plaintiff may request an award of reasonable attorney fees.").

If the Court determines that an award of costs and/or reasonable attorney's fees is appropriate in this case, Plaintiff will submit a motion in compliance with L.R. 54.

**<u>Post-Judgment Interest</u>** – Plaintiff is entitled to post-judgment interest on any award of damages.  Under 28 U.S.C. §1961, "postjudgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973)). Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest, attorney's fees, and costs. *Air Separation*, 45 F.3d at 290, 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. . . the date of the judgment." 28 U.S.C. §1961(a).   Accordingly, Plaintiff requests that the Court's judgment include post-judgment interest, assuming judgment is entered.

## VIII. <u>CONCLUSION</u>

For these reasons, Plaintiff respectfully requests the Court grant her Motion against Defendants, jointly and severally, and award $340,500.00 in compensatory damages; at least $1,021,500.00 in exemplary damages; an award of appropriate attorney's fees and costs; prejudgment interest of $40,674.44, increasing by $93.29 per day thereafter, through judgment; and post-judgment interest as provided by law from the date of entry of judgment until the date the judgment is paid in full.

DATED:  January 19, 2023

GARCIA RAINEY BLANK & BOWERBANK LLP

By    _____/s/ Norma V. Garcia_____
                    NORMA V. GARCIA
                    JEFFREY M. BLANK
                    Attorneys for Plaintiff
                    LI MEI CHEN

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT