GARCIA RAINEY BLANK & BOWERBANK LLP
A LIMITED LIABILITY PARTNERSHIP
NORMA V. GARCIA, Cal. Bar No. 223512
ngarciaguillen@garciarainey.com
JEFFREY M. BLANK, Cal. Bar No. 217522
jblank@garciarainey.com
695 Town Center Drive, Suite 540
Costa Mesa, CA 92626
Telephone:  (714) 382-7000
Facsimile:   (714) 784-0031
Attorneys for Plaintiff
LI MEI CHEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LI MEI CHEN, an individual<br><br>Plaintiff,<br><br>v.<br><br>URBAN COMMONS 6TH AVE SEATTLE, LLC, a Delaware Limited Liability Company; TAYLOR WOODS, an individual; HOWARD WU, an individual; WU DEVELOPMENT, LLC, a California Limited Liability Company; ANNIE WU, an individual; and DOES 1 through 10, inclusive<br><br>Defendants. | **Case No.:** 2:21-cv-08866-JLS-DFM<br>**Judge**:   Hon. Josephine L. Staton<br>**Dept**:      8A<br><br>**DECLARATION OF LI MEI CHEN IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>Date: March 3, 2023<br><br>**UNDER SUBMISSION** |

# DECLARATION OF LI MEI CHEN

I, Li Mei Chen, hereby declare:

1. I am an individual residing in Albuquerque, New Mexico and am the Plaintiff in this action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2. This Declaration is submitted in support of Plaintiff Li Mei Chen's Motion for Entry of Default against defendants Urban Commons 6th Ave Seattle ("UC Seattle"), Taylor Woods ("Woods"), and Howard Wu ("Wu," and collectively with UC Seattle and Woods, "Defendants").

3. On or about July 3, 2020, I received a document entitled Urban Commons 6th Ave Seattle, LLC Membership Interest Subscription Agreement ("Subscription Agreement")[1] via email from a representative of UC Seattle. I understood that entering into this Subscription Agreement would provide me with a one percent (1%) interest in UC Seattle, which I understood was created by Woods and Wu to indirectly purchase the Hilton Seattle.

4. Based on the representations made to me in the Subscription Agreement, including, but not limited to, that (i) the UC Seattle offering would be completed by July 10, 2020, (ii) my investment funds would be placed in an interest-bearing secure bank account, (iii) my investment funds would only be used as part of the purchase payment for the Hilton Seattle, (iv) UC Seattle was obtaining approximately $70,000,000 in acquisition loans to acquire and refurbish the Hilton Seattle, and (v) Urban Commons, LLC ("Urban Commons"), which I understood was owned and

---

[1] The Subscription Agreement signed by me on July 3, 2020 was attached to the Complaint filed in this matter as Exhibit A. (*See* Dkt. No. 1-1.)

-1-
DECLARATION OF LI MEI CHEN IN SUPPORT OF MOTION
FOR ENTRY OF DEFAULT JUDGMENT

controlled by Woods and Wu, would be the sole manager of UC Seattle, I executed the Subscription Agreement on July 3, 2020, and purchased a one percent (1%) membership interest by investing Three Hundred Thousand Dollars ($300,000.00) in UC Seattle.

5. On or about July 9, 2020, I caused my $300,000 investment in UC Seattle to be sent via wire transfer to UC Seattle.

6. Attached hereto as **Exhibit A** is a true and correct copy of the wire transfer of my $300,000 in investment funds in UC Seattle that I sent on July 9, 2020.

7. That same day, I received confirmation from Defendants that UC Seattle had received my $300,000 in investment funds.

8. In addition to executing the Subscription Agreement, I also entered into an Investment Agreement with Defendants. Under the Investment Agreement, I understood that I would receive guaranteed preferred returns of six percent (6%) per annum to be paid each calendar quarter at 1.5% of my investment of $300,000 in UC Seattle, or $4,500 each calendar quarter, resulting in $18,000 per year for as long as Defendants held my investment.

9. Attached hereto as **Exhibit B** is a true and correct copy of the Investment Agreement, executed by me on July 5, 2020.

10. I received no information or confirmation from Defendants that the UC Seattle offering was completed by July 10, 2020.

11. On October 11, 2020, I received an email from Annie Wu, an employee of Urban Commons addressed to Howard Wu, Taylor Woods, and all UC Seattle investors stating that Defendants were purportedly in the "final stages" of acquiring the Hilton Seattle and that they expected to be able to start paying investors their owed interest payments beginning on November 1, 2020.

12. Attached hereto as **Exhibit C** is a true and correct copy of correspondence between Annie Wu and myself from October 11, 2020 through November 3, 2020, which includes the October 11, 2020 email I received from Annie

-2-
DECLARATION OF LI MEI CHEN IN SUPPORT OF MOTION
FOR ENTRY OF DEFAULT JUDGMENT

Wu, an employee of Urban Commons, addressed to Woods, Wu, and all UC Seattle investors.

13. To date, I have only received the equivalent of one quarterly guaranteed preferred return payment, split into two separate deposits: (i) $2,250.00 received on November 3, 2020 and (ii) $2,250.00 received on November 4, 2020—totaling $4,500.00, or 1.5% of my investment.

14. Attached hereto as **Exhibit D** is a true and correct copy of my November 2020 checking account statement which displays deposits from Urban Commons 6th Ave Seattle LLC on November 3, 2020 and November 4, 2020, each for $2,250.00.

15. Over seven (7) months had passed since my investment and I had received no information regarding whether the UC Seattle offering was completed or whether Defendants had acquired the Hilton Seattle.

16. Accordingly, on February 17, 2021, I provided Defendants with written notice to terminate the Subscription Agreement and Investment Agreement and sought return of my $300,000 investment under the Subscription Agreement and payment of the guaranteed Preferred Returns through March 1, 2021 promised under the Investment Agreement.

17. Attached hereto as **Exhibit E** is a true and correct copy of the letter sent by my attorney at the time dated February 17, 2021 that was sent to Urban Commons and cc'ed Howard Wu terminating the Subscription Agreement and Investment Agreement and demanding payment of my investment and guaranteed preferred returns.

18. On March 8, 2021, I was informed that there would be a Zoom call hosted by Howard Wu with UC Seattle investors.

19. Attached hereto as **Exhibit F** is a true and correct copy of the email I received on March 8, 2021 informing me of the Zoom call to be held that evening.

20. During the Zoom call, Wu refused to state if and/or when the UC Seattle investors would be paid their quarterly interest pursuant to the Investment

Agreement. Wu further stated that UC Seattle would be closing on the Hilton Seattle acquisition in March or April of 2021. When UC Seattle investors, including myself, asked if walking away from the Hilton Seattle deal was an option for Defendants, Wu stated that it was not an option because no financial contingency was in place, so as a result, walking away from the deal would result in the loss of the over Six Million Dollar ($6,000,000) down payment. In addition, when UC Seattle investors, including myself, requested financial statements from UC Seattle, Wu represented that financial statements would only be provided when there was a payout and/or twice a year.

21. In addition, on the Zoom call, Wu stated that we could apply for a Paycheck Protection Program ("PPP") loan. I asked him how it was possible to obtain a PPP loan when the Hilton Seattle deal has not closed and UC Seattle has not purchased the property, since PPP loans require a prior history of ownership. Wu repeatedly responded that this kind of PPP loan does not require ownership. Wu also admitted that he received a bank statement from the seller in 2020 but refused to provide it to me.

22. When UC Seattle investors, including myself, asked Wu for proof of our investment money because we need a statement to report our earnings, Wu did not reply and deflected our remaining questions.

23. I took contemporaneous handwritten notes at the time of the Zoom call on March 8, 2021, which I typed up and summarized.

24. Attached hereto as **Exhibit G** is a true and correct copy of my typed and summarized contemporaneous notes from the Zoom call on March 8, 2021.

25. On April 14, 2021, I received an email from Felix Wong, an employee of Urban Commons, addressed to all UC Seattle investors stating that UC Seattle had "limited cash flow" and would not be able to pay interest to investors but also represented that UC Seattle would "accumulate missing interest payments and will resume paying after July 1st, 2021."

26. Attached hereto as **Exhibit H** is a true and correct copy of the email I received on April 14, 2021 from Felix Wong.

27. On June 22, 2021, I participated in a phone call with Wu, during which I asked Wu for my investment funds back. In response to my question, Wu stated that he would talk to Woods to see how much Woods and Wu "could give me back."

28. On June 25, 2021, Wu emailed me a copy of the Purchase and Sale Agreement ("PSA") for the purchase and sale of the Hilton Seattle.

29. Attached hereto as **Exhibit I** is a true and correct copy of the email I received on June 25, 2021 from Howard Wu attaching the PSA.

30. Attached hereto as **Exhibit J** is a true and correct copy of the PSA, effective date December 24, 2019, that I received from Howard Wu.

31. On August 28, 2021, I participated in another Zoom call with all UC Seattle investors hosted by Defendants and once again the call was led by Wu.

32. Attached hereto as **Exhibit K** is a true and correct copy of an email I received on August 26, 2021 setting the Zoom call for August 28, 2021.

33. Soon after the Zoom call started, Wu admitted that Defendants had used our investment money to fund other projects within Urban Commons, and stated that the only way to get our money back was to sue the seller, but if we did that, we would lose all our investment money and just pay more to lawyers. Wu repeatedly encouraged UC Seattle investors to stay the course and assured that the deal would close.

34. During the Zoom call, Wu represented that UC Seattle had not yet closed on the Hilton Seattle deal but would instead be waiting until September or October 2021. During the Zoom call, Wu also represented that he was still discussing with Woods whether UC Seattle investors would be receiving interest payments on their investments and that they would discuss liquidating other parts of the company to pay for the interest payments.

35. When the UC Seattle investors, including myself, pressed Wu as to why he was not providing the investors with more frequent updates, Wu said, "trust me we are all friends." When the UC Seattle investors, including myself, asked Wu why there was no financial contingency in place, Wu stated it was not standard practice to have a financial contingency at "this level."

36. When some UC Seattle investors, including myself, said we wanted to take our money out, Wu said we would lose our earnest money because the seller would not return the money. He then talked about a PPP loan again, this time saying that we can get paid by the government *after* the property was acquired.

37. When I again asked Wu for a bank statement showing where our investment money was held, escrow, and the amount paid, Wu deflected, saying he already put money down and the only way out is to sue the seller and lose all our money.

38. As the UC Seattle investors continued to voice their questions and concerns to Wu, Wu cut the Zoom call short and left the UC Seattle investors, including myself, with a myriad of unanswered questions and growing concerns.

39. I took contemporaneous handwritten notes at the time of the Zoom call on August 28, 2021, which I typed up and summarized.

40. Attached hereto as **Exhibit L** is a true and correct copy of my typed and summarized contemporaneous notes from the Zoom call on August 28, 2021.

41. On September 7, 2021, I once again attempted to talk to Wu about receiving my investment funds back, but Wu told me he was "too busy" to talk to me.

42. To date, neither Woods nor Wu has provided me with any answer about receiving interest payments on my investment or a return of my investment funds.

43. To date, I have not received my investment funds that I demanded back from Defendants.

44. The funds I invested constituted my retirement savings. Had I known that Defendants would squander my investment and deprive me and my family of our

future monies, I would never have entered into any contract or even dealt with Defendants.

I declare under the penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on January 19, 2023 at Albuquerque, New Mexico.

_____
LI MEI CHEN

-7-
DECLARATION OF LI MEI CHEN IN SUPPORT OF MOTION
FOR ENTRY OF DEFAULT JUDGMENT