# EXHIBIT 2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EHT US1, Inc., *et al.*, | ) | Case No. 21-10036 (CSS) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| Urban Commons Queensway, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No.: 21-50476 (CSS) |
| | ) | |
| EHT Asset Management, LLC, Taylor Woods, and Howard Wu, | ) ) | |
| | ) | **Related D.I. 78 and 99** |
| Defendants. | ) | |
| _____ | ) | |

## OPINION

| | |
|---|---|
| Cole Schotz, P.C. | Bodell Bové, LLC |
| Seth Van Aalten | Bruce W. McCullough |
| G. David Dean | 1225 N. King Street, Suite 1000 |
| Justin R. Alberto | Wilmington, DE 19801 |
| 500 Delaware Avenue | |
| Wilmington, DE 19801 | Attorney for Defendants |
| -and- | EHT Asset Management, LLC, |
| Paul Hastings LLP | Taylor Woods, and Howard Wu |
| Luc A. Despins | |
| Nicholas A. Basset | |
| G. Alexander Bongartz | |
| 200 Park Avenue | |
| New York, NY 10166 | |
| | |
| Attorneys for Plaintiff | |
| Urban Common Queensway, LLC | |

Dated: November 15, 2021
Sontchi, J. _[signature]_

## INTRODUCTION

Messrs. Woods and Wu are fraudsters. They fraudulently obtained a PPP loan on behalf of the Debtor without authority and absconded with the proceeds, leaving either the Debtor or the United States to pay back the lender. They were sued by the Debtor, and, after notice and a hearing, the Court entered summary judgment against them and their company and enjoined Defendants from dissipating their assets. In addition, the Court ordered a detailed accounting. Defendants have not provided a sufficient accounting and have baldly stated they intend to dissipate their assets.

The Court cannot countenance Defendants' willful refusal to comply with its injunction to the detriment of the Debtor's creditors. Thus, the Court finds Defendants in contempt of the preliminary injunction, and will convene a hearing on Friday, November 19th to consider what sanction to impose, including whether to place Messrs. Wu and Wood in custody. The Court does not take this step lightly, but the actions of Defendants in derogation of a Court order entered after notice and a hearing leave no alternative.

## FACTUAL BACKGROUND

### A. Procedural Posture

Before the Court is (i) Plaintiff's, Urban Commons Queensway, LLC, Motion for Judgment of Civil Contempt Against Defendants for Failure to Comply with Preliminary

2

Injunction, filed on September 23, 2021 (the "Contempt Motion"),[1] (ii) Defendants'[2] response to the Contempt Motion,[3] (iii) Plaintiff's reply in support of the Contempt Motion,[4] (iv) Defendants' Preliminary Accounting to the Court of the PPP Funds, filed on October 21, 2021,[5] (v) Plaintiff's Motion for Leave to File Statement in Response to Defendants' Preliminary Accounting to Court of PPP Funds, filed on October 26, 2021 (the "Motion for Leave"),[6] (vi) Defendants' Supplemental Accounting to the Court of the PPP Funds.[7] This is the Court's decision on the Contempt Motion and the Motion for Leave.

### B. The PPP Adversary Proceeding

On May 24, 2021, Plaintiff commenced this adversary proceeding against Defendants to recover approximately $2.4 million, plus other damages, as a result of Defendants' fraudulent scheme to obtain a PPP loan on behalf of Urban Commons Queensway, LLC ("UCQ"). Plaintiff concurrently filed a motion for preliminary injunction (the "Initial PI Motion"),[8] together with voluminous documentary evidence detailing Defendants' fraudulent conduct. On May 26, 2021, after notice and a hearing,

---

[1] Adv. D.I. 78. Documents filed in Bankr. Case No. 21-10036 shall be referred to herein as "D.I. #" and documents filed in Adv. Pro. Case No. 21-50476 shall be referred to herein as "Adv. D.I. #."

[2] Collectively, EHT Asset Management, LLC, Taylor Woods, and Howard Wu will be referred to herein as the "Defendants."

[3] Adv. D.I. 84.

[4] Adv. D.I. 86.

[5] Adv. D.I. 97.

[6] Adv. D.I. 99.

[7] Adv. D.I. 102.

[8] Adv. D.I. 3 and 11.

3

the Court denied the Initial PI Motion, despite an "overwhelming likelihood of success" on the merits, based on its finding that Plaintiff failed to establish there was a risk of irreparable harm.[9]

On June 28, 2021, after Defendants answered the Complaint, Plaintiff filed Plaintiff Urban Commons Queensway, LLC's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 (the "Summary Judgment Motion"),[10] requesting entry of judgment in Plaintiff's favor in an amount not less than $2,437,500.[11]

On July 2, 2021, Defendants' former counsel filed its motion for leave to withdraw as counsel to the "Urban Commons Parties," including Defendants (the "Withdrawal Motion").[12]

Rather than responding to the Summary Judgment Motion on its merits, on July 12, 2021, the deadline for Defendants to submit a response, Defendants filed a motion for an extension of time (the "Extension Motion"), seeking an extension of time to file any opposition to the Summary Judgment Motion until Defendants had retained substitute counsel.[13]

On July 15, 2021, Plaintiff filed its Memorandum of Law in Opposition to Defendants' Motion to Extend the Time to Respond to Plaintiff Urban Commons

---

[9] Adv. D.I. 23 (May 26, 2021, Hr'g Tr., at 49:18-19).

[10] Adv. D.I. 37.

[11] See Adv. D.I. 1.

[12] D.I. 910.

[13] Adv. D.I. 46.

4

Queensway, LLC's Motion for Summary Judgment and Renewed Cross-Motion for Preliminary Injunctive Relief (the "Renewed PI Motion").[14] On July 26, 2021, the Court held a hearing on notice to Defendants, as to Plaintiff's Renewed PI Motion (the "Second PI Hearing"). Defendants participated in the Second PI Hearing through counsel. At the conclusion of the Second PI Hearing, the Court took the Renewed PI Motion under advisement.

On August 12, 2021, the Court held a hearing on the Withdrawal Motion. No replacement counsel nor other representative of Defendants (including Mr. Wu) appeared at the hearing. The Court granted the Withdrawal Motion on the record at the hearing and stated that Defendants would be given no further adjournments of deadlines in these cases on account of not having counsel.[15] Specifically, in connection with the Summary Judgment Motion, the Court held that "the deadline to file the summary judgment motion response . . . will be extended 28 days from the entry of the order [granting the Withdrawal Motion]. No further extensions will be granted without consent, even on an argument that counsel is just about to get retained. That is not going to fly."[16]

On August 16, 2021, the Court entered orders (the "August 16 Orders"), implementing its oral rulings, and granting the Withdrawal Motion[17] and Extension

---

[14] Adv. D.I. 48.

[15] *See* D.I. 1045 (Aug. 12, 2021, Hr'g Tr., at 48:3–5).

[16] *Id.* at 61:24–62:4.

[17] D.I. 1043.

5

Motion as well as directing Defendants to respond to the Summary Judgment Motion within 28 days from entry of the order approving the Withdrawal Motion, i.e., September 13, 2021.[18]

On August 27, 2021, the Court entered the Order Granting Plaintiff Urban Commons Queensway, LLC's Renewed Cross-Motion for Preliminary Injunctive Relief,[19] (the "PI Order"), adopting its findings and conclusions as set forth in its Letter Opinion of the same date,[20] and enjoining each of Defendants from transferring, encumbering or otherwise disposing of $2,437,500 or assets of equivalent value and requiring each Defendant to account for such funds or assets to Plaintiff. In granting this relief, the Court found that:

> Mr. Woods misrepresented or lied to U.S. authorit[ies] with the implied consent of Mr. Wu by applying for and obtaining an SBA PPP loan in Defendant Woods' name to be used for wrongful purposes. Specifically, Mr. Woods knowingly or recklessly made false statements to obtain an SBA PPP loan by signing an SBA PPP loan application on behalf of Plaintiff without Plaintiff's knowledge or consent. After wrongfully obtaining the funds, Messrs. Woods and Wu transferred them to Defendant EHT Asset Management, an entity they wholly owned, and then caused the funds to disappear. They now have the gumption to refuse to return the funds to Plaintiff (or even hold the funds in a trust pending outcome of the litigation). These facts show Defendants' willingness to flaunt the law, use entities and transfers to avoid paying money wrongfully obtained, and a lack of remorse for so doing.

---

[18] Adv. D.I. 67.

[19] Adv. D.I. 71.

[20] Adv. D.I. 69 (*Urban Commons Queensway, LLC v. EHT Asset Mngt., LLC (In re EHT US1, Inc.)*, No. 21-10036, 2021 WL 3828556, at *1 (Bankr. D. Del. Aug. 27, 2021).

> Additionally, Plaintiffs bring before this Court evidence of multiple lawsuits and judgments against Defendants Woods and Wu for fraud, breach of repayment obligations, and other loan defaults.[21]

The Court found that it was likely that, "absent a preliminary injunction, the Defendants' assets will dissipate and Plaintiff will not recover."[22]

Defendants failed to respond to the Summary Judgment Motion by the September 13, 2021 deadline.[23] On September 14, 2021, Mr. Wu wrote a letter to the Court, requesting

---

[21] *In re EHT US1, Inc.*, No. 21-10036, 2021 WL 3828556 at *2-3 (footnotes omitted).

[22] *Id.* at *3.

[23] Defendants had more than 90 days to respond to the Summary Judgment Motion but did not file a response. Defendants have subsequently asserted that "there is a high probability that the $2.4 million judgment can be offset against amounts owed by the Debtors to [Defendants]." Adv. D.I. 88 (EHT Asset Management, LLC, Taylor Woods, and Howard Wu Reply to the Debtors' Response to Motion to Extend Time for Filing Notice of Appeal) at p. 6 (emphasis removed). As noted above, the Court has already granted a preliminary injunction to freeze the assets of the each of the Defendants, finding that Defendants Woods and Wu have a "history of wrongful acts," are "capable of shuffling assets," that Woods and Wu "misrepresented or lied," and "knowingly or recklessly made false statements." *In re EHT US1, Inc.*, No. 21-10036, 2021 WL 3828556 at *2-3. Courts will not allow setoff when doing so would offend the general principles of equity. *U.S. Bank, Nat'l Ass'n v. Rosenberg*, 581 B.R. 424, 428 (E.D. Pa.), aff'd, 741 F. App'x 887 (3d Cir. 2018) ("Courts will not allow setoff, however, where doing so would offend the general principles of equity."). *See also Fed. Deposit Ins. Corp. v. Borne*, 599 F. Supp. 891, 894 (E.D.N.Y. 1984) (citations omitted) (waiver in a contract of setoff will not be enforced to bar a viable set off or counterclaim sounding in fraud); *Sterling Nat. Bank & Tr. Co. of New York v. Giannetti*, 53 A.D.2d 533, 533, 384 N.Y.S.2d 176, 177 (1976) (holding that "defenses based upon allegations of fraud may not be waived"); *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 739 (Bankr. E.D. Pa. 2000) (citations omitted) (holding that "where the creditor has committed inequitable, illegal or fraudulent acts, or the application of setoff would violate public policy."); *Womack v. Houk (In re Bangert)*, 226 B.R. 892, 904 (Bankr. D. Mont. 1998) ("Even where there is mutuality of debt, a bankruptcy court may disallow an otherwise proper § 553 setoff if there are compelling reasons for not allowing such a preference.").

In any event, Defendants did **not** reply to the Summary Judgment Motion, *pro se* or otherwise. Defendants were aware of the already extended deadline to respond to the Summary Judgment Motion and then failed to timely appeal the uncontested entry of the Summary Judgment Order. Moreover, asserting an alleged substantive ground to in a motion in a reply brief, *let alone a reply brief to a subsequent motion*, is wholly inappropriate. *See* Adv. D.I. 101 at fn. 18 (Memorandum Order Denying Amended Motion to Extend Time for Filing Notice of Appeal filed by Defendants); *see also Oberwager v. McKechnie Ltd.*, 351 F. App'x 708, 711 n. 5 (3d Cir. 2009) ("It is, of course, inappropriate to raise an argument for the first time in a Reply brief."); *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) (citations omitted) ("Issues raised for the first time in a reply brief are generally deemed waived."); *Ceglia v. Zuckerberg*, 287 F.R.D. 152, 162 (W.D.N.Y. 2012) (citations omitted) (holding that "arguments raised for the first time in replying in further support of a motion are generally deemed waived."); *see also Ruiz v. Comm'r of Dep't of Transp. of City of New*

7

an extension of time for an additional 30 days to allow him to secure new counsel.[24] Mr. Wu's letter stated: "We have selected and come to terms with the new counsel, however, we have been unable to fully onboard the new counsel within the time given."[25] Plaintiff opposed the request for further extension.[26]

On September 14, 2021, the Court entered the Summary Judgment Order. Among other things, the Summary Judgment Order incorporated the terms of the PI Order and provided that such terms remain "in full force and effect.".[27]

On September 17, 2021, the Court entered an order denying Mr. Wu's letter request for an extension of time to allow him to obtain new counsel.[28] Defendants have now obtained counsel.[29]

---

*York*, 858 F.2d 898, 902 (2d Cir. 1988) (holding that it is within the discretion of the court to reject an argument first raised in a reply brief that is "so belatedly advanced and so vaguely supported.").

[24] D.I. 1163.

[25] *Id.*

[26] D.I. 1164.

[27] Adv. D.I. 76 at 4.

[28] D.I. 1174.

[29] Adv. D.I. 81 (filed on Oct. 7, 2021) (Notice of Appearance filed by EHT Asset Management, LLC, Taylor Woods, and Howard Wu). Through counsel, Defendants have filed appeals related to three orders issued by the Court: (i) D.I. 1276 (Notice of Appeal of Order Denying Extension of Time Request (D.I. 1174)); (ii) D.I. 1278 (Notice of Appeal of Order granting Debtors Third Omnibus Objection (Substantive) to Proofs of Claims Filed by Master Lessees Pursuant to Bankruptcy Code 503 and Bankruptcy Rule 3007 (D.I. 1176)); and (iii) D.I. 1284 (Notice of Appeal to Order Sustaining Bank of America, N.A. Omnibus Objection (Substantive) to Master Lessee Claims and Joinder to Debtors Third Omnibus Objection (Substantive) to Proofs of Claims Filed by Master Lessees Pursuant to Bankruptcy Section 502 and Bankruptcy Rule 3007 (D.I. 1190)). By way of additional background, the 15 claims asserted by the Master Lessees, owned and controlled by Mr. Woods and Mr. Wu, sought to recover more than $190 million in the aggregate. *See* Claim Nos. 799, 800, 801, 802, 804, 805, 806, 807, 808, 811, 813, 816, 817, 818, and 819. Defendants did not timely appeal the Summary Judgment Order. *See* Adv. D.I. 89, filed on October 19, 2021. On October 28, 2021, the Court issued an Order Denying Defendants' Motion to Extend Time to Filed an Appeal. Adv. D.I. 101.

### C. Defendants Have Not Complied with the PI Order

Although the PI Order was effective immediately upon its entry, Plaintiff did not receive (and still has not received) any indication from Defendants that they have frozen assets in compliance with the PI Order nor any accounting of such assets.

On September 15, 2021, Plaintiff notified each Defendant by letter that it had "not yet received any accounting or confirmation that [Defendant has] complied with the [PI] Order by identifying and preserving $2,437,500.00 in cash or assets of equivalent value."[30] The Demand Letters also requested that each Defendant confirm in writing by no later than Friday, September 17, 2021, that "[it had] preserved such cash or assets, and identify the cash or specific assets that have been preserved and the bank account(s) or other location(s) in which they are being held." Plaintiff also expressed its intention to submit its motion to compel compliance with the PI Order and to request the Court to find Defendants in contempt if Defendants did not comply with the PI Order by Friday, September 17, 2021.

On September 17, 2021, Mr. Wu responded to the Demand Letter explaining that Defendants were still in the process of engaging counsel, and they "would need an extension of 60 days" to gain access to accounting records and engage substitute counsel. Mr. Wu did not otherwise explain or confirm whether he or any other Defendant had preserved $2,437,500 in cash or other assets or identify such assets and their location.

---

[30] Referred to herein as the "Demand Letters" or "Demand Letter" as the case may be. The Demand Letters were attached to the Contempt Motion as Exh. 1.

9

On October 21, 2021, Defendants filed a "preliminary account" of the PPP Funds (the "Preliminary Accounting").[31] As pointed out by Plaintiff, the Preliminary Accounting appears simply to trace[32] the PPP Funds, rather than an identify and preserve (for Plaintiff's benefit) $2,437,500 in cash or other assets from any source and to account for those assets to Plaintiff.[33]

---

[31] Adv. D.I. 97.

[32] For example:

> 7. The UETQMLB Operating Account paid $1.5M to the Operating Lessee to operate during COVID-19. Urban Commons, LLC, provides funds to the 3rd Party Manager. The 3rd Party Manager legitimately spent money for expenses and employees.
>
> 8. Approximately $900,000 was paid to the City Long Beach for the city rent and taxes. Defendants have no control over the 3rd Party Management Company billing for the T0T Tax. The Management Company paid their own bills and employees but did not pay the $900,000 to the city.
>
> 9. Urban Commons was paid $1.5 million to reimburse it for the funds spent to operate during the pandemic. After May, payments were made pro rata to the 18 entities for payroll, insurance, and legal expenses.

Adv. D.I. 97 at ¶¶ 7-9. Not only is this a purported tracing of the (alleged) use of the PPP Funds. The only support appears to be list of wire transfers, again, with no support. There is no explanation of these expenses or what the expenses are meant to accomplish. Nothing in the Preliminary Accounting is sufficient for the purposes of the PI Order.

[33] Presumably Defendants are planning to argue that they are not liable for any damages under the lowest intermediate balance test ("LIBT") because recovery is limited to the proceeds of the fraudulent PPP loan, which they argue have been spent, under a theory that Defendants held those proceeds of the PPP loan in trust for Plaintiff. *See generally Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135 at 151-160 (Bankr. D. Del. 2010) (Discussing and applying the LIBT). However, the LIBT does not serve to *limit* the claims of the beneficiaries of a dissipated trust. It simply *prefers* the beneficiaries of a trust but only to the extent they can trace the *res* and, after applying the LIBT, show that it has not been extinguished, in whole or in part, through comingling with other assets. The beneficiaries of the trust remain creditors of the trustee to the extent they cannot recover from the *res* but must share *pro rata* with the remaining creditors to recover their deficiency. Thus, even if Defendants held the proceeds of the PPP loan in trust for the benefit of Plaintiff and those funds have been dissipated and/or comingled with other assets, Plaintiff still has a claim against Defendants for which judgment has been entered and Defendants are required to take the actions set forth in the PI Order.

The only two paragraphs in the Preliminary Accounting that responds to the PI Order are as follows:

> 10. Defendants have not spent or dissipated any of the PPP funds since the Court's Order of August 27, 2021 (D.I. 71).
>
> 11. Defendants have no *other assets*, and all their **collective assets** in any event are subject to an Order by the California Bankruptcy Court in the Urban Commons Chapter 7 Proceedings to freeze their assets.[34]

However, the Preliminary Accounting is not a sworn statement. The Court has no verification of the term "no other assets." The Court is skeptical that each of Defendants has no assets (no house, no car, no bank accounts, no personal property). Recently, Messrs. Woods and Wu, through a separate entity, provided a $10 million deposit in connection with their unqualified bid for certain of the Debtor's assets.[35] Furthermore, the only related debtor in the Central District of California is Urban Commons LLC, which is not a defendant here, and the California Bankruptcy Court has not substantially consolidated any of Defendants with Urban Commons LLC. It is equally unclear whether all of Defendants' assets have been frozen by the California Bankruptcy Court. And *even if* such were true, Defendants have neither sought nor received relief from complying with this Court's PI Order.

On November 8, 2021, Defendants filed Defendants' Supplemental Accounting to the Court of the PPP Funds (the "Second Supplemental Accounting").[36] The Second

---

[34] Adv. D.I. 97 (Preliminary Accounting) at ¶¶ 10-11 (emphasis added).

[35] *See* D.I. 791 (Tr. Hr'g. May 26, 2021) 22:5-29:11; D.I. 802 (Tr. Hr'g May 28, 2021) 145:17-149:16.

[36] Adv. D.I. 102. The Court notes that the Second Supplemental Accounting was filed after the Notice of Completion of Briefing (Adv. D.I. 100), making the briefing on the Contempt Motion a moving target. Furthermore, the lateness of the filing was compounded by Defendants' counsel not delivering a copy of

11

Supplemental Accounting attaches the Declaration of Howard Wu (the "Wu Declaration").[37] The Second Supplemental Accounting states:

> 6. The uses and transfers of the PPP loan are detailed in ¶¶ 5-8 of the Declaration. Defendants' information shows that, far from stripping assets from Urban Commons Queensway, LLC for their own purposes, Defendants' company had financially supported Urban Commons Queensway, LLC, during the financial fallout from the pandemic and used the PPP loan funds for expenses resulting from the [sic] its operations.

As noted with the Preliminary Accounting, this is *wholly* unresponsive to the Court's demand for an accounting in the PI Order. The Wu Declaration again *traces* funds:

> 5. The May 21, 2020, transfer of $2,437,500.00 from Urban Commons Queensway, LLC, to EHT Asset Management, LLC, was for purposes of a PPP loan and the transferred funds were placed in the EHT Asset Management, LLC, operations account.
>
> 6. From the PPP loan, approximately $900,000 was sent to the City of Long Beach for taxes owed by Urban Commons Queensway, LLC. Approximately $1.5MM was used to reimburse part of the approximately $1.9MM EHT Asset Management, LLC, had advanced on behalf of Urban Commons Queensway, LLC.[38]

The Wu Declaration then remarkably states, in clear violation of the PI Order:

> EHT Asset Management, LLC, has recently reached a proposed deal with the SBA whereby EHT Asset Management, LLC, will pay $100,000 to Evolution and Evolution will be able to properly complete the transfer on the

---

the Second Supplemental Accounting to chambers or even notifying chambers through email or telephone. As the Court is unable to monitor the docket in all its cases, the Court relies on counsel, in accordance with local practice and procedure, to deliver supplemental briefing to chambers. The Court was only made aware of the Second Supplemental Accounting when Plaintiff's counsel sent a responsive letter to chambers, Adv. D.I. 102, and provided a copy of the Second Supplemental Accounting therewith.

[37] Adv. D.I. 102, Exh. A.

[38] Wu Declaration at ¶¶ 5-6.

12

> books of the employees to EHT QMLB, LLC which is EHT Asset Management, LLC's entity.[39]

The PI Order *specifically* requires Defendants to freeze all assets – instead Mr. Wu declares that Defendant EHT Asset Management, controlled by Messrs. Woods and Wu, has access to $100,000 and is intending to transfer such funds. None of Defendants have frozen assets in the amount of $2,437,500 as *required by the PI Order.*

## ANALYSIS

### A. The Bankruptcy Court's Power to Sanction or Find Contempt

Section 105 of the Bankruptcy Code states that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[40] This provision "supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."[41] While it does not give the power to "'create substantive rights that would otherwise be unavailable under the Bankruptcy Code,'"[42] it gives the court "general equitable powers . . . insofar as those powers are applied in a manner consistent with the Code."[43] As a result, bankruptcy courts frequently find parties in civil contempt under the authority granted within this provision.[44]

---

[39] Wu Declaration at ¶ 8.

[40] 11 U.S.C. § 105(a).

[41] *Gillman v. Cont'l Airlines (In re Cont'l Airlines),* 203 F.3d 203, 211 (3d Cir. 2000).

[42] *Id.* (citing *United States v. Pepperman,* 976 F.2d 123, 131 (3d Cir. 1992)).

[43] *Joubert v. ABN AMRO Mort. Group, Inc. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005) (quoting *In re Morristown & Erie R. Co.,* 885 F.2d 98, 100 (3d Cir. 1989)).

[44] *See, e.g., In re Cont'l Airlines, Inc.*, 236 B.R. 318, 331 (Bankr. D. Del. 1999) *aff'd sub nom. In re Cont'l Airlines*, 90-932, 2000 WL 1425751 (D. Del. Sept. 12, 2000) *aff'd sub nom. In re Cont'l Airlines, Inc.,* 279 F.3d 226 (3d Cir. 2002). *See also In re Baker,* 390 B.R. 524, 531 (Bankr. D. Del. 2008) *aff'd,* 400 B.R. 136 (D. Del. 2009); *In re*

13

Federal courts also have an additional inherent power to sanction parties who have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[45] Sanctions imposed pursuant to this inherent power vindicate the court's authority while avoiding the need to resort to the more drastic sanctions available for contempt of court.[46] Yet, "[b]ecause of their very potency," the federal courts must be careful to exercise these inherent powers "with restraint and discretion."[47]

**B. Contempt and Possible Sanctions for Contempt**

Procedurally, motions for an order for contempt are governed by Federal Rule of Bankruptcy Procedure 9014, pursuant to Federal Rule of Bankruptcy Procedure 9020.[48] Rule 9014 provides that contested matters not otherwise governed by the rules shall be governed by motion.

Sanctions for civil contempt can be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the

---

*Anderson*, 348 B.R. 652, 661 (Bankr. D. Del. 2006); *WCI Communities, Inc. v. Espinal (In re WCI Communities, Inc.)*, No. 08-11643, 2012 WL 1981713 (Bankr. D. Del. June 1, 2012) (Carey, J.). *Accord Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989); *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (Matter of Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612 (5th Cir. 1997); *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir. 1990).

[45] *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

[46] *Id.*

[47] *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. at 45–46).

[48] Rule 9020 states the following: "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." Prior to the 2001 Amendments, Rule 9020 provided that contempt could be determined by a bankruptcy judge only after a hearing on notice, unless the contempt was committed in the presence of a bankruptcy judge. The Advisory Committee Notes state that this was modified because "[i]ssues relating to the contempt power of bankruptcy judges are substantive and are left to statutory and judicial development, rather than procedural rules."

14

movant for losses sustained.[49] Movant must prove three elements by clear and convincing evidence to establish that a party is liable for civil contempt: (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.[50] The "clear and convincing" standard holds a heavy burden; where there is ground to doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt.[51] Any ambiguity in the law should also be resolved in favor of the party charged with contempt.[52] Lastly, parties should not be held in contempt unless the Court first gives fair warning that certain acts are forbidden.[53]

Whether a sanction for contempt is criminal or civil depends on the character of the sanction imposed, not on the subjective intent of the Court.[54] Civil contempt is coercive and looks to the future.[55]

The sanctions available to a court in response to civil contempt are "many and varied," encompassing "an indeterminate period of confinement," fines, reimbursement, or any combination of these.[56] These sanctions remain coercive and civil, rather than

---

[49] *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303-04 (1947).

[50] *Marshak v. Treadwell,* 595 F.3d 478, 485 (3d Cir. 2009) (quoting *Harley–Davidson, Inc. v. Morris*, 19 F.3d 142, 145 (3d Cir. 1994)).

[51] *Fox v. Capital Co.*, 96 F.2d 684, 686 (3d Cir. 1938).

[52] *U.S. on Behalf of I.R.S. v. Norton*, 717 F.2d 767, 774 (3d Cir. 1983).

[53] *Id.*

[54] *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 635-36 (1988).

[55] *Walsh v. Bracken (In re Davitch)*, 336 B.R. 241, 251 (Bankr. W.D. Pa. 2006) (quoting *In re Eskay,* 122 F.2d 819, 823 (3d Cir. 1941)).

[56] *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO,* 545 F.2d 1336, 1344 (3d Cir. 1976), discussed in *Walsh v. Free (In re Free)*, 466 B.R. 48, 57 (Bankr. W.D. Pa. 2012).

punitive and criminal, as long as the contemnor is afforded the opportunity to purge the contempt.[57] Yet when utilizing civil sanctions, the Third Circuit advises courts to "apply the least coercive sanction . . . reasonably calculated to win compliance with its orders."[58] If compliance is not forthcoming, the initial penalty may be increased, or a new penalty appropriate under the circumstances may be selected.[59]

**C. Defendants are Liable for Civil Contempt for Violating the PI Order**

The PI Order, entered on August 27, 2021, is a valid and enforceable order of this Court. The PI Order was signed after a hearing and after sufficient notice of the Renewed PI Motion and the Second PI Hearing.[60] By its own terms, the PI Order became effective immediately.[61] Thus, Plaintiff has satisfied the first element of contempt.

Furthermore, Defendants had knowledge of the PI Order. Defendants filed an opposition to the Renewed PI Motion[62] and appeared at the Second PI Hearing.[63] The PI Order was served on Defendants' counsel and on Defendants via first class mail at their

---

[57] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829-30 (1994). *See also Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585 (1947) ("Fine and imprisonment [can be] employed not to vindicate the public interest but as coercive sanctions to compel the contemnor to do what the law made it his duty to do.").

[58] *In the Matter of Grand Jury Impaneled January 21, 1975*, 529 F.2d 543, 551 (3d Cir. 1976).

[59] *Id.*

[60] Adv. D.I. 71.

[61] *Id.* at ¶ 6 ("This [PI] Order shall be effective immediately.").

[62] Adv. D.I. 53 (Memorandum of Law in Opposition to Debtors' Renewed Cross-Motion for Preliminary Injunctive Relief).

[63] *See e.g.,* Adv. D.I. 63 (Tr. of Hr'g July 26, 2021) and D.I. 962 (Sign-In Sheet for Hrg. July 26, 2021).

16

last known addresses.[64]   Additionally, Mr. Wu responded to the Demand Letter, requesting additional time.[65]  The Plaintiff has satisfied the second element of contempt.

It is also clear that Defendants have not complied with the PI Order.  The PI Order provides that Defendants "shall not transfer, encumber or otherwise dispose of $2,437,500.00 or assets of equivalent value[,]" and "shall account for such funds or assets to the Plaintiff[.]"[66]  As discussed above, the Preliminary Accounting and Second Supplemental Accounting are not remotely in compliance with the PI Order.  Defendants have satisfied the third and final element of contempt.

As a result, the Court finds that Defendants are in civil contempt of the PI Order.

## D. Sanctions for Defendants' Contempt of the PI Order

The Court is given wide discretion to tailor the most effective remedy to obtain compliance.[67]  Plaintiff asserts that monetary sanctions would be insufficient to compel Defendants' compliance with the PI Order and seek the "temporary confinement" of Messrs. Woods and Wu.[68]

---

[64] Adv. D.I. 73 (BNC Certificate of Mailing) and 74 (Affidavit of Service filed by Donlin, Recano & Company, Inc.).

[65] *See* Adv. D.I. 78 (Plaintiff Urban Commons Queensway, LLC's Memorandum of Law in Support of Motion for Judgment of Civil Contempt Against Defendants for Failure to Comply with Preliminary Injunction, Exh. B).

[66] PI Order, ¶¶ 2–3. When requested, Plaintiff did not consent to Defendants' request for additional time (*see* Adv. D.I. 78 (Plaintiff Urban Commons Queensway, LLC's Memorandum of Law in Support of Motion for Judgment of Civil Contempt Against Defendants for Failure to Comply with Preliminary Injunction, Exh. B).  Furthermore, the Court was not asked for such extension of time to comply with the PI Order.

[67] *Burtch v. Masiz (In re Vaso Active Pharms., Inc.)*, 514 B.R. 416, 425 (Bankr. D. Del. 2014) (citations omitted).

[68] *See* Adv. D.I. 78 at ¶ 25.

There is no question that the Court has the power to incarcerate Messrs. Woods and Wu for civil contempt, if necessary.[69] Nonetheless, the Court will not take such a drastic action without conducting an evidentiary hearing. While the Court is gravely concerned that monetary sanctions will be insufficient to compel Defendants to comply

---

[69] *In re Vaso Active Pharms., Inc.*, 514 B.R. at 425-26 (citations omitted) (holding that the Court had the power to incarcerate as a last resort effort for egregious behavior). *See also McGrath v. McGrath (In re McGrath)*, 298 B.R. 56, 61-2 (Bankr. W.D. Pa. 2003) (movant's request for attorney's fees for the motion was granted, but the request for immediate incarceration of the debtor was deferred); *In re Miller*, No. 05-16155DWS, 2007 WL 4322541, at *5 (Bankr. E.D. Pa. Dec. 11, 2007) (footnotes omitted) (holding that "if disgorgement to the Debtor and full payment of all penalties has not been paid to the Clerk of the Court by January 11, 2008, a further Order shall be entered to cause Turner's imprisonment. Any such incarceration shall continue until Turner has complied with the Contempt Order by making full payment or takes appropriate action to demonstrate an inability to do so."); *In re Free*, 466 B.R. at 61 ("Failure to comply will result in this Court ordering the United States Marshal to take Debtor into custody and bring him before this Court to answer for his conduct."); *Matter of Kennedy*, 80 B.R. 674, 675 (Bankr. D. Del. 1987) ("His failure to appear at the appointed time will result in the United States Marshal being notified to bring Mr. Kennedy before the court for incarceration until such time as he agrees to answer to the trustee."). *See, e.g., U.S. ex rel. Thom v. Jenkins*, 760 F.2d 736, 740 (7th Cir. 1985), which held

> we note that each passing month of incarceration strengthens Thom's claim of inability, . . . for it can be assumed that at a certain point any man will come to value his liberty more than $115,752.68 and the pride lost in admitting that he has lied. Of course that point cannot be identified in the abstract and we leave that determination to the discretion and good judgment of the district judge. We also note that although incarceration for civil contempt may continue indefinitely, it cannot last forever. If after many months, or perhaps even several years, the district judge becomes convinced that, although Thom is able to pay he will steadfastly refuse to yield to the coercion of incarceration, the judge would be obligated to release Thom since incarceration would no longer serve the purpose of the civil contempt order—coercing payment.

*Id.* (citations omitted); *In re Norris*, 192 B.R. 863, 874 (Bankr.W.D.La.1995) ("This Court steadfastly believes that incarceration is the only appropriate sanction to influence Norris to turn over the money.") *subsequently aff'd*, 114 F.3d 1182 (5th Cir.1997); *Balaber-Strauss v. Markowitz (In re Frankel)*, 192 B.R. 623, 632 (Bankr.S.D.N.Y.1996) ("[T]he Court concludes that incarceration is the only sanction which is appropriate in the circumstances and which is likely to serve the interests of the debtor's estate"); *Mayex II v. Du-An Products, Inc. (In re Mayex II Corp.)*, 178 B.R. 464, 470 (Bankr. W.D. Mo. 1995) ("In this case, McDowell requests that the Court direct the United States Marshals Service to arrest the chief officers of each defendant and confine them to prison until each chief officer is ready to purge the contempt by complying with the debtor examination order."); *In re Duggan*, 133 B.R. 671, 672 (Bankr. D. Mass. 1991) ("Incarceration is therefore the only alternative. Incarceration would perhaps be the most appropriate sanction even if others were available.").

18

with the PI Order, it will only impose the "least coercive sanction . . . reasonably calculated to win compliance with [PI Order]."[70]

## CONCLUSION

As set forth above, the Court finds Defendants in contempt of the PI Order. The Court will hold an in-person hearing on November 19, 2021, at 2:00 pm ET, to determine the least coercive sanction reasonably calculated to win compliance with the PI Order. That sanction may include the incarceration of Messrs. Woods and Wu who are ordered the attend the hearing in-person. Finally, the Motion for Leave will be granted. An order will be entered.

---

[70] *In the Matter of Grand Jury Impaneled January 21, 1975*, 529 F.2d at 551.