1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LI MEI CHEN, an individual

Plaintiff,

v.

URBAN COMMONS 6TH AVE
SEATTLE, LLC, a Delaware Limited
Liability Company; TAYLOR
WOODS, an individual; HOWARD
WU, an individual; WU
DEVELOPMENT, LLC, a California
Limited Liability Company; ANNIE
WU, an individual; and DOES 1
through 10, inclusive

Defendants.

**Case No.:** 2:21-cv-08866-JLS-DFM
**Judge**:    Hon. Josephine L. Staton
**Dept**:    8A

**[PROPOSED] ORDER RE:
PLAINTIFF LI MEI CHEN'S MOTION
FOR ENTRY OF DEFAULT
JUDGMENT**

Date: March 3, 2023

**UNDER SUBMISSION**

**[PROPOSED] ORDER**

Before the Court is a Motion for Entry of Default Judgment filed by Plaintiff Li Mei Chen, seeking default judgment against Defendants Urban Commons 6th Ave Seattle, LLC ("UC Seattle"), Taylor Woods, and Howard Wu.  Having read and considered the papers and taken matter under submission, the Court GRANTS the Motion.

## I.   BACKGROUND

In or about January 2020, Defendants issued a private offering ("UC Seattle Offering") to investors, seeking to raise $30,000,000 in membership interest in UC Seattle. (Dkt. No. 1 – Complaint ("Compl."), at ¶ 16.)  Woods and Wu created UC Seattle to indirectly purchase the Hilton Seattle and named Urban Commons as UC Seattle's sole manager, giving it "exclusive authority and control over all Company [UC Seattle] decisions in entering into and managing real estate investments." (*Id.*; Dkt. No. 1-1 – Exh. A to Compl. – Urban Commons 6th Ave Seattle, LLC Membership Interest Subscription Agreement ("SA"), pp. 1, 6.)

On July 3, 2020, Plaintiff received the SA, through which Defendants made various representations, including, but not limited to: **(i)** UC Seattle would complete the UC Seattle Offering by July 10, 2020; **(ii)** UC Seattle would not use or apply the purchase price until it had raised the necessary funds from the UC Seattle Offering, which would only be used to acquire the Hilton Seattle; **(iii)** the purchase price for the Hilton Seattle would be deposited into an interest-bearing secure bank account; **(iv)** if the subscription is terminated, the funds raised by UC Seattle would be returned to the investors plus interest; **(v)** UC Seattle was obtaining acquisition loans of $70,000,000.00 to acquire and refurbish the Hilton Seattle; and **(vi)** Urban Commons would be sole manager of UC Seattle.  (SA, p. 1; Compl., ¶¶ 17, 19-22.)

Based on the foregoing representations made in the SA, among others, Plaintiff executed the SA on July 3, 2020, and purchased a one percent (1%) membership interest by investing Three Hundred Thousand Dollars ($300,000.00) in UC Seattle. (Compl., ¶ 18; SA, pp. 1, 4.)   On July 9, 2020, Plaintiff wired her $300,000 investment in UC Seattle. (Compl., ¶ 18; Declaration of Li Mei Chen ("Chen Decl."), ¶ 5, Exh. A.)  That same day, Plaintiff received confirmation from Defendants that UC Seattle had received Plaintiff's funds.  (Compl., ¶ 18.)

Plaintiff also entered into an Investment Agreement ("IA") on July 5, 2020 with Defendants Woods and Wu through Urban Commons, the sole manager of UC Seattle.  (Compl., ¶ 26; *see also* Chen Decl., ¶ 9, Exh. B – IA.)   Through the IA, Defendants made various representations, including, but not limited to, guaranteeing preferred returns such that Plaintiff would receive a six percent (6%) guaranteed preferred return per annum on her $300,000 investment, to be paid each calendar quarter at the rate of 1.5% each calendar quarter for as long Defendants held Plaintiff's investment.  (IA, p. 1, §1(a)-(c); *see also* Compl., ¶¶ 26-27.)

Pursuant to the IA, Plaintiff is entitled to quarterly interest payments equaling 1.5% of the Investment Capital—Plaintiff's $300,000 investment—or $4,500.00. (*Id.*)   To date, Plaintiff has only received the equivalent of one quarterly interest payment, split into two separate deposits: (i) $2,250.00 received on November 3, 2020 and (ii) $2,250.00 received on November 4, 2020.  (Compl., ¶ 28; Chen Decl., ¶ 14, Exh. D - 2020 Q3 Quarterly Interest payment.)

The SA and IA, through which Defendants offered and sold to Plaintiff a membership interest in UC Seattle, are unregistered securities in violation of the Securities Act of 1933 ("Securities Act") and were not exempt from such registration or qualification.  (Compl., ¶ 29; *see also* SA and IA.)

During Defendants' solicitation of Plaintiff's investment, Woods and Wu did not disclose their relationship with, involvement in, and/or ownership of Eagle Hospitality Trust ("EagleHT"), a Singaporean real estate investment trust (REIT) that

was going to purchase UC Seattle from Woods and Wu upon the acquisition of the Hilton Seattle. (Compl., ¶ 30.) Specifically, Wu and Woods own equity in EagleHT and were the Chairman and Deputy Chairman, respectively, of the EagleHT board until at least May 2020. (*Id.*; Request for Judicial Notice ("RJN"), Exh. 1.)

At the time they solicited Plaintiff's investment, Defendants failed to disclose the following material facts: **(1)** Urban Commons, not UC Seattle, was the Buyer listed on the Purchase and Sale Agreement ("PSA") for the Hilton Seattle, which was effective as of December 24, 2019; **(2)** Urban Commons could either (i) assign its interest to an entity it controlled or owned, as long as Wu and/or Woods control 25% or more of the assignee; or (ii) to EagleHT without condition; **(3)** as of December 2019, EagleHT defaulted on a $341,000,000.00 facility loan, on which Urban Commons was the master lessee; **(4)** Woods and Wu were under investigation by the Monetary Authority of Singapore and Singapore Stock Exchange for breaches of disclosure requirements, regulations, and listing rules relating to EagleHT SP, under which shares of EagleHT are traded, resulting EagleHT SP's suspension of trading. (Compl., ¶¶ 16, 30-34; Chen Decl., ¶ 30, Exh. J, Art. 11, §11.1; RJN, Exh. 1.)

Indeed, Plaintiff relied on Defendants' misrepresentations and omissions in deciding to invest in UC Seattle. (*Id.*, ¶ 35.) But for such omissions and misrepresentations, Plaintiff would not have invested in UC Seattle. (*Id.*)

Plaintiff wired her investment to UC Seattle on July 9, 2020. (Chen Decl., ¶¶ 5-6, Exh. A.) Defendant never provided Plaintiff with any documentation showing that her investment was deposited in an interest-bearing secure bank account, as promised under the SA. (*Id.*, ¶¶ 20, 22, 24, 37, 40, Exhs. G, L.) In addition, documents obtained from First American Title Insurance Company ("FAT") do not show Plaintiff's $300,000 investment was ever deposited in the escrow account for the acquisition of the Hilton Seattle. (Garcia Decl., ¶ 27, Exh. D.) Indeed, the first deposit after Plaintiff's investment was for only $50,000 on August 25, 2020. (*Id.*)

On October 11, 2020, Plaintiff received an email addressed to all UC Seattle investors stating that Defendants were in the "final stages" of acquiring the Hilton Seattle and expected to be able to start paying investors their owed interest payments beginning on November 1, 2020.  (Compl., ¶ 25; Chen Decl., ¶¶ 11-12, Exh. C.)

Yet, the acquisition never occurred.  (Compl., ¶ 25.)  All monies deposited in the escrow account totaled $5,800,000 from January through October 2020.  (Garcia Decl., ¶ 27, Exh. D.)  But, by October 14, 2020, all those funds were released to the seller and no further transactions occurred.  (*Id.*)  Indeed, FAT alleges it no longer holds any funds for UC Seattle.  (*Id.*; *see also* Garcia Decl., ¶ 28, Exh. E.)

On February 17, 2021, Plaintiff gave Defendants written notice to terminate the SA and IA and demanded her $300,000 investment back and payment of guaranteed preferred returns.  (Compl., ¶ 37; Chen Decl., ¶¶ 16-17, Exh. E.)

Over the course of the following six (6) months, Plaintiff engaged in numerous phone calls with and Zoom meetings led by Howard Wu, as outlined in the Complaint and Chen Declaration, in which Wu made the following representations:

1.      At first, Wu represented that the Hilton Seattle acquisition would close in March or April 2021, but later said it would be closer to September or October 2021.  (Compl., ¶¶ 38, 41; Chen Decl., ¶¶ 20, 24, 34, 40, Exhs. G, L.)

2.      There was no financial contingency in place because it was not standard practice "at this level," so walking away from the deal would result in all investors losing $6 million down payment.  The only way to get their money back would be to sue the seller.  (Compl., ¶¶ 38, 41; Chen Decl., ¶¶ 20, 24, 33, 35, 37, 40, Exhs. G, L.)

3.      Wu refused to provide Plaintiff with financial statements related to the acquisition, bank account or escrow statements, or any proof of investment.  (Compl., ¶¶ 38, 41; Chen Decl., ¶¶ 20, 22, 24, 35, 37, 40, Exhs. G, L.)

4.      Wu refused to state whether Plaintiff would get her investment back or to commit to paying guaranteed preferred returns pursuant to the IA, despite representing to Plaintiff on April 14, 2021 that UC Seattle would "accumulate

missing interest payments and resume paying after July 1st, 2021." (Compl., ¶ 39, 40, 42; Chen Decl., ¶¶ 25, 27, 41, Exh. H.)  But Wu repeatedly represented he and Woods were discussing whether to return investment funds or pay guaranteed preferred returns. (Compl., ¶¶ 40-42; Chen Decl., ¶¶ 27, 34, 40, 41, Exh. L.)

5.   On an August 28, 2021 Zoom call with UC Seattle investors, Wu admitted Defendants used their investment money to fund other Urban Commons projects, and stated the only way to get investors' money back was to sue the seller, and if the investors sued the seller, they would lose all their investment money and just pay more to lawyers. (Compl., ¶ 41; Chen Decl., ¶¶ 33, 40, Exh. L.)  Wu encouraged investors to stay the course and assured the deal would close. (*Id.*)

Thereafter, on September 7, 2021, Plaintiff once again attempted to talk to Wu about receiving her investment funds back, but Wu told Plaintiff he was "too busy" to talk to her. (Compl., ¶ 42; Chen Decl., ¶ 41.)  Thus, to date, (i) neither Woods nor Wu has provided Plaintiff with any answer about receiving guaranteed preferred return payments on her investment or a return of her investment funds; and (ii) Plaintiff has not received the investment funds she demanded back. (Compl., ¶ 43.)

Based on the facts alleged above, Plaintiff brings twenty-two causes of action against Defendants.  (*Id.*, ¶¶ 50-190.)   Plaintiff seeks default judgment on the following causes of action: second (Securities Act §12); third (Securities Act §15); fifth (Securities Exchange Act §10(b) and Rule 10b-5); sixth (Cal. Corp. Code §§25401, 25501); seventh (Cal. Corp. Code §§25400, 25500); ninth (Cal. Corp. Code §§25503, 25504.1, 25110); tenth (Cal. Corp Code §25504); eleventh (Cal. Corp. Code §§25401, 25504.1; twelfth (Cal. Corp. Code §§25200 *et seq.*, 25501.5); thirteenth (breach of contract); fourteenth (Cal. Penal Code §496(c)); fifteenth (constructive fraud); sixteenth (fraud—false promise); seventeenth (fraud—concealment); eighteenth (fraud—intentional misrepresentation); and twenty-second (Cal. Bus. & Prof. Code §17200 *et seq.*).

Plaintiff filed proofs of service of the Complaint as to Defendants UC Seattle, Howard Wu, and Taylor Woods.  (Dkt. Nos. 12-14.)  Plaintiff requested the Clerk to Enter Default as to the above Defendants for their failure to respond to the Complaint, and default was entered.  (Dkt. Nos. 28, 30, 32, 35.)

Plaintiff now seeks default judgment as to Defendants UC Seattle, Taylor Woods, and Howard Wu.  Plaintiff seeks (i) $340,500.00 in compensatory damages, or alternatively, restitution of that amount, (ii) $1,021,500.00 in exemplary damages, as well as any other exemplary damages the Court may deem appropriate on all causes of action; (iii) $40,674.44 in pre-judgment interest through the date of filing this Motion, and increasing by $93.29 per day thereafter, through judgment; (iv) an award of appropriate attorney's fees and costs; and (v) post-judgment interest as provided by law from the date of entry of judgment until the date the judgment is paid in full.

## II.     **LEGAL STANDARD**

Under Fed. R. Civ. P. 55(b)(2), the Court may enter default judgment when a party fails to plead or defend a case.  On entry of default, well-pled allegations in the complaint regarding liability are generally deemed admitted.  *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007).  The entry of default judgment is further justified when a party fails to timely respond to a properly-served complaint.  *Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1986).  The entry of a default judgment is left to the Court's sound discretion.  *PepsiCo. Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999), citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Court considers several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the

strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The moving party may submit declarations and affidavits in support of the default judgment request. *See* L.R. 55-2; *see also Board of Trs. of the Sheet Metal Workers' Pension Plan of S. Cal. v. Westway Constr., Inc.*, No. 09-CV-7023-GAF-FMO, 2010 WL 11596465, at *1 (C.D. Cal. Feb. 26, 2010) ("Along with the complaint, the court may look to affidavits and declarations to determine whether default judgment is appropriate."). "In applying this discretionary standard, default judgments are more often granted than denied." *Triunfo-Mex*, 189 F.R.D. at 432.

## III.   DISCUSSION

### A.   Plaintiff Has Met the Procedural Requirements to Move for Entry of Default Judgment

In ruling on a motion for entry of default judgment, the district court must first determine whether the motion complies with Fed. R. Civ. P. 55(a) and L.R. 55-1 and 55-2. *See PepsiCo, Inc. v. Cal. Sec. Cans* ("*PepsiCo*"), 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Service of the Motion on a defaulting party is required only if the party has appeared in the action (*Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n. 19 (C.D. Cal. 2010)), or, under L.R. 55-2, if the amount claimed in a judgment by default is unliquidated.

Plaintiff satisfies the requirements of Fed. R. Civ. P. 55(a) and L.R. 55-1. As set forth in the Garcia Decl., (1) Plaintiff has completed service on each of the Defendants with service of the Summons and Complaint; (2) none of Defendants Woods, Wu, or UC Seattle have appeared in this action and none of these Defendants responded to the Complaint within the time period permitted by Fed. R. Civ. P. 12; (3) Plaintiff caused the Clerk to enter defaults against Defendants Woods, Wu, and UC Seattle for their failure to answer the Complaint; (4) neither Woods, Wu, nor UC Seattle are minors or incompetent persons; (5) none of Woods, Wu, or UC Seattle are

in the military service or otherwise exempt under the Servicemembers Civil Relief Act (50 U.S.C. App. §521).  (Garcia Decl., ¶¶ 4-20.)

**B.     The *Eitel* Factors.**

**1.     <u>Possibility of Prejudice to Plaintiff</u>**

The possibility of prejudice exists where "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. at 1177; *see also Philip Morris USA v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery.").  Here, absent default judgment, Plaintiff has no other means to recover her investment, as Defendants have not appeared in this case at all.  This factor therefore favors entry of default judgment.

**2.     <u>The Merits of Plaintiffs' Claims and the Sufficiency of the Complaint.</u>**

The second and third *Eitel* factors are often analyzed together.  *PepsiCo*, 238 F. Supp. 2d at 1175 ("The Ninth Circuit has suggested that these two factors require that a plaintiff state a claim on which the [plaintiff] may recover." (internal citations and quotation marks omitted).).  For the purpose of default, all well-pleaded allegations in the complaint relating to liability are assumed to be true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also Acceptance Indem. Ins. Co. v. Bray*, No. 18-CV-2996-RGK-FFM, 2018 WL 6017017, at *2 (C.D. Cal. July 26, 2018).  Additionally, a defendant's liability is conclusively established and all factual allegations of the complaint, except those relating to damages, are assumed to be true.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**(i)     Securities Act §12 (2nd Cause of Action)**

Securities Act §12(a)(1) (15 U.S.C. §77l(a)(1)) creates a private right of action against any person who "offers or sells a security in violation of" Securities Act §5 (15 U.S.C. §77e).  Securities Act §5 prohibits the offer or sale of unregistered

securities. *Id.* "The linchpin of the [Securities] Act is its registration requirement." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S.Ct. 1318, 1323 (2015). Due to the innumerable ways in which investors are likely to be manipulated and harmed absent the protections of the federal securities laws, Securities Act §§5 and 12(a)(1) provide for strict liability against any person who offers or sells an unregistered security. *See Pinter v. Dahl*, 486 U.S. 622, 638 (1988).

Here, and as alleged in the Complaint, the UC Seattle Offering was a sale of securities under controlling federal law. *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). Under the test established by the Supreme Court in *Howey*, an offering is an investment contract security where there is "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits to be produced by the efforts of others." *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009) (citation omitted).

Plaintiff invested $300,000 for a 1% membership interest in UC Seattle, a common enterprise, with the expectation of profits solely dependent on the entrepreneurial and/or managerial efforts of others, specifically Defendants timely completing the UC Seattle offering and acquiring and/or refurbishing the Hilton Seattle. (Compl., ¶¶ 17, 19-22; SA, p. 1.) Further, the securities were never registered for public sale with the SEC. (Compl., ¶ 29.)

Securities Act §12(a)(2) (15 U.S.C. §77l(a)(2)) imposes civil liability on any person who offers or sells a security by means of a prospectus or oral communication that includes "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading…" *Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006, 1028-29 (9th Cir. 2005) (citing 15 U.S.C. § 77l(a)(2)). "To establish liability under section 12(a)(2), a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that

the defendants solicited purchase of the securities for their own financial gain." *Id*., at 1029 (citing *Pinter*, 486 U.S. at 647).

Here, and as alleged in the Complaint, Defendants made various material misrepresentations and omissions concerning: (a) Woods and Wu's credentials, expertise, experience, and capabilities to induce the trust and confidence of Plaintiffs and other investors (Compl., ¶¶ 30-34, 36; RJN, Exh. 1); (b) the default by EagleHT and acceleration thereafter of its $341 Million loan (Compl., ¶¶ 31, 34, 36; RJN Exh. 1); (c) the completion date for the UC Seattle Offering, that Urban Commons was the buyer pursuant to the PSA, and the dates on which the Hilton Seattle would be sold to EagleHT (*id.*, ¶¶ 30, 34, 36; SA, p. 1; *see also* Chen Decl., ¶ 30, Exh. J); (d) the raising of necessary funds from the offering of membership interests in order to purchase the Hilton Seattle (Compl., ¶¶ 22-25, 36, 38-41; Chen Decl., ¶¶ 11-12, 18-40, Exhs. C, F-L); (e) the status of Plaintiff's investment, the acquisition of the Hilton Seattle, and the escrow account allegedly holding Plaintiff's investment (Compl., ¶¶ 36; Chen Decl., ¶¶ 10-12, 15, 18-40, Exhs. C, F-L; Garcia Decl., ¶¶ 27, 28; Exhs. D, E); and (f) the guaranteed preferred returns Plaintiff would receive under the IA (Compl., ¶¶ 27-29, 36, 38-41; Chen Decl., ¶¶ 8-9, 13-14, 18-40 (Exhs. B-D, F-L).

Moreover, Defendants knew they were in default as the master lessee of EagleHT's $341 million facilities loan and later admitted that Urban Commons decided to use Plaintiff's investment funds for other Urban Commons projects since the Hilton Seattle acquisition was going nowhere. (Compl., ¶¶ 19, 41; Chen Decl., ¶¶ 33, 40, Exh. L.)  In addition, by the time Defendants solicited Plaintiff's membership interest in UC Seattle, Defendants had already deposited investment funds in a non-refundable escrow account and had already begun releasing investment funds to the seller. (Compl., ¶¶ 20, 40; Garcia Decl., ¶ 27, Exh. D.)

Because the Complaint sufficiently alleges violations of Securities Act §12(a)(2), the second and third *Eitel* factors weigh in favor of entering default judgment on the second cause of action.

### (ii)     Cal. Corp. Code §25110 (9th Cause of Action)

Cal. Corp. Code §25110 restricts the offer or sale of unregistered securities. Under California law, an investment contract is a security.  Cal. Corp. Code §25019. As discussed in Section III.B.2(i), *supra*, the security, namely, the membership interest in UC Seattle, was unregistered and not except from registration or qualification.  (Compl., ¶¶ 29, 92, 93.)

Because the Complaint sufficiently alleges violations of Cal. Corp. Code §25110, the second and third *Eitel* factors weigh in favor of entering default judgment on the ninth cause of action.

### (iii)    Cal. Corp. Code §§25400, 25401 (6th, 7th Causes of Action)

Under Cal. Corp. Code §25401 it is unlawful to sell a security in California "by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which the statements were made, not misleading."  Notably, Cal. Corp. Code §25401 does not require any intent to deceive.  *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561 MMC, 2005 WL 3590984, at *27 (N.D. Cal. Dec. 30, 2005).  Under Cal. Corp. Code §25501, a private plaintiff may bring an action for violations of Cal. Corp. Code §25401 and seek either rescission or damages.  Under Cal. Corp. Code §25400, it is unlawful to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it made, false or misleading with respect to any material fact… and which he knew or had reasonable ground to believe was so false or misleading."   Cal. Corp. Code §25500 authorizes a private right of action for violations of Cal. Corp. Code §25400.

Here, as discussed above in Section III.B.2(i), Defendants sold to Plaintiff the membership interest in UC Seattle via written misrepresentations and omissions,

which under the circumstances, were false or misleading, and Defendants knew or had reasonable ground to know were false or misleading. (Compl., ¶¶ 77, 84.)

Because the Complaint sufficiently alleges violations of Cal. Corp. Code §§25400 and 25401, the second and third *Eitel* factors weigh in favor of entering default judgment on the sixth and seventh causes of action.

### (iv) Securities Act §15 (3rd Cause of Action)

Under Securities Act §15(a), every person who controls any person liable under Securities Act §11 or §12 "shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." 15 U.S.C. §77o(a). "To establish that someone is a 'controlling person' the complainant must show that there was a relationship between the controlling and controlled person and that actual power or influence was exerted over the alleged controlled person." *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987). Section 15(a), therefore, "imposes joint and several liability upon every person who controls any person liable under §11 or §12… Thus, violation of §15(a) is predicated upon violation of §11 or §12." *In re Metricom Sec. Litig.*, No. C 01-4085 PJH, 2004 WL 966291, at *9 (N.D. Cal. Apr. 29, 2004).

Here, and as alleged in the Complaint, due to their ownership interest in and/or role in managing UC Seattle and conducting its functions, Woods and Wu acted as controlling persons within the meaning of Section 15(a) of the Securities Act as alleged herein. (Compl., ¶ 58.) By virtue of their positions as owners and/or managers of Urban Commons and participation in and/or awareness of UC Seattle's operations, Woods and Wu had the power and control, and did influence and control, directly or indirectly, the decision making relating to the UC Seattle Offering, including the decision to engage in the sale of unregistered securities via the UC Seattle Offering, as discussed in Section III.B.2(i), *supra*. (*Id.*, ¶¶ 16, 40-41; SA, p. 1, 6; *see also* Chen Decl., ¶ 28-29, Exh. J.)

Because the Complaint sufficiently alleges violations of Securities Act §15(a),

-12-

the second and third *Eitel* factors weigh in favor of entering default judgment on the third cause of action.

### (v)      Cal. Corp. Code §§ 25504, 25401, 25504.1 (10th, 11th Cause of Action)

Cal. Corp. Code §25504 provides: "[e]very person who directly or indirectly controls a person liable under Section 25501 or 25503, …every principal executive officer or director of a corporation so liable, … are also liable jointly and severally with and to the same extent as such person…"  Cal. Corp. Code §25504.1 provides: "[a]ny person who materially assists in any violation of Section … 25401… with the intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation.

As discussed above in Section III.B.2(iv), *supra*, Woods and Wu directly and indirectly controlled UC Seattle as managing members of Urban Commons and materially aided and abetted in the violation by UC Seattle, namely, the misrepresentations and omissions intended to defraud Plaintiff contained in the SA delivered to Plaintiff, which are outlined in Section III.B.2(i), *supra*.  (Compl., ¶¶ 102-104; 106-109.)  Woods and Wu knowingly intended that Plaintiff would rely on the misrepresentations and would pay Defendants for securities in UC Seattle.  (*Id.*, ¶¶ 110-111.)

Because the Complaint sufficiently alleges violations of Cal. Corp. Code §§ 25504, 25401, and 25504.1, the second and third *Eitel* factors weigh in favor of entering default judgment on the tenth and eleventh causes of action.

### (vi)      Securities Exchange Act §10(b) & Rule 10b-5 (5th Cause of Action)

Plaintiff has an implied private right of action under Securities Exchange Act §10(b) (15 U.S.C. §78j(b)).  *See*, *e.g.*, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1581 n.5 (9th Cir. 1990), citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976).  Section 10(b) and Rule 10b-5 thereunder (17 C.F.R. §240.10b-5) prohibit

fraud in connection with the purchase or sale of any security. *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855 n.2 (9th Cir. 2001). Although §10(b) and Rule 10b-5 require that defendants acted with scienter, the requisite state of mind may be established by a showing of recklessness. *Hollinger*, 914 F.2d at 1568-69 ("[A] reckless omission of material facts upon which the plaintiff put justifiable reliance in connection with a sale or purchase of securities is actionable under Section 10(b)."). "Fraud touching the intrinsic value of securities and the means of accomplishing the purchase of securities is sufficiently connected with securities transactions to bring the fraud within section 10(b)." *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993). To prevail on a private right of action under §10(b) and Rule 10b-5, Plaintiff need only show: (1) material misrepresentation or omission by Defendants; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; and (5) damages. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975). Each of these elements is satisfied.

*First*, Defendants knowingly made misrepresentations and omissions to Plaintiff, as discussed in Section III.B.2(i), *supra*. (Compl., ¶ 65.) *Second*, Defendants had actual knowledge of the misrepresentations and omissions of material facts or acted recklessly with deliberate disregard for the truth. (*Id.*) *Third*, based on Defendants' misrepresentations and omissions, Plaintiff was induced to invest $300,000 in UC Seattle, which, as established in Section III.B.2(i), *supra*, is a security. (Compl., ¶ 66.) *Fourth*, Plaintiff reasonably and justifiably relied upon the representations, promises, and other statements, communications, and conduct by Defendants in investing in UC Seattle. (Compl., ¶ 67.) Plaintiff was ignorant of, and Defendants concealed and did not disclose to Plaintiff, material facts which were necessary to prevent the fraud on Plaintiff. (*Id.*, ¶ 68.) *Fifth*, as a result of such justifiable reliance on Defendants' omissions and misrepresentations, Plaintiff suffered losses, namely, her $300,000 investment in UC Seattle. (*Id.*, ¶¶ 70-72.)

Because the Complaint sufficiently alleges violations of Securities Exchange

Act §10(b) and Rule 10b-5, the second and third *Eitel* factors weigh in favor of entering default judgment on the fifth cause of action.

### (vii) Cal. Corp. Code §§25200 *et seq.* & 25501.5 (12th Cause of Action)

California law authorizes an action for rescission and/or damages, and an award of attorney's fees and costs, by any person who purchased a security from or sells a security to a broker-dealer that is required to be licensed but is not. *See* Cal. Corp. Code §25501.5. At the time of the solicitation, offer, and sale of the securities in UC Seattle to Plaintiff, none of the Defendants were licensed as securities broker-dealer(s) as required by Part 3 of Cal. Corp. Code §25200 *et seq.* (Compl., ¶ 117.)

Because the Complaint sufficiently alleges violations of Cal. Corp. Code §§25200 *et seq.* and § 25501.5, the second and third *Eitel* factors weigh in favor of entering default judgment on the twelfth cause of action.

### (viii) Breach of Contract (13th Cause of Action)

The elements of a claim for breach of contract are (1) existence of a contract; (2) performance by the plaintiff or excuse for non-performance; (3) breach by the defendant; and (4) damage to the plaintiff as a result of defendant's breach. *Landstar*, 725 F. Supp. 2d at 920. Plaintiff entered into valid and enforceable contracts with Defendants, namely, the SA and IA. (Compl., ¶¶ 125.) Plaintiff complied with her obligations, performed to the extent performance was due, and all conditions required for performance were satisfied. (*Id.*, ¶¶ 126.) Despite Plaintiff's performance, Defendants materially breached the SA. (*Id.*, ¶ 127; Chen Decl., ¶¶ 33, 40, Exh. L; Garcia Decl., ¶¶ 28, 29, Exhs. D, E.) Defendants also breached the IA by failing to pay to Plaintiff any Preferred Returns due and owed after November 4, 2020. (Compl., ¶ 128; Chen Decl., ¶¶ 8-9, 13-14, 18-40, Exhs. B (IA, § 1), D, F-L.) Each material breach directly and proximately caused Plaintiff to suffer damages. (Compl., ¶ 129.)

Because the Complaint sufficiently alleges breach of the SA and IA, the

second and third *Eitel* factors weigh in favor of entering default judgment on the thirteenth cause of action.

### (ix) Cal. Penal Code §496(c) (14th Cause of Action)

To prevail under Cal. Penal Code §496, Plaintiff must prove that Defendants knowingly received property obtained through theft or extortion, or sold, withheld, concealed, or aided in concealing, stolen property from the owner.  Cal. Penal Code §496(a).  "Any person who has been injured by a violation of subdivision (a) … may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."  Cal. Penal Code §496(c).

Woods and Wu fraudulently converted and used Plaintiff's property for their own benefit, with intent to deprive Plaintiff of use of her property.  Defendants deceived Plaintiff through misrepresentations and omissions in the SA and IA to induce her to purchase a membership interest in UC Seattle. (*See* Section III.B.2(i), *supra*.)  Even after Plaintiff sought to terminate her membership interest, Defendants Woods and Wu were in indefinite discussions as to whether to return her $300,000 investment. (Compl. ¶¶ 40-42.) Furthermore, Defendants repeatedly tried to use their "imminent" closing on the Hilton Seattle acquisition to maintain possession of Plaintiff's investment even after the UC Seattle Offering failed to complete by July 10, 2020, stating that the acquisition would be completed by the end of October 2020, then March or April 2021, then September or October 2021.  (*Id.*, ¶¶ 25, 38, 41; Chen Decl., ¶¶ 11-12, 20, 24, 33-34, 40, Exhs. C, G, L.)

Because the Complaint sufficiently alleges violations of Cal. Penal Code §496(c), the second and third *Eitel* factors weigh in favor of entering default judgment on the fourteenth cause of action.

### (x) Fraud (15th – 18th Cause of Action)

The elements of fraud are (1) misrepresentation; (2) scienter; (3) intent to defraud and induce reliance; (4) justifiable reliance; and (5) damages.  *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  "An action for promissory fraud may lie

where a defendant fraudulently induces the plaintiff to enter into a contract." *Id*.

Here, Defendants fraudulently induced Plaintiff, through misrepresentations and omissions in the SA and IA, to purchase a membership interest in UC Seattle. (*See* Section III.B.2(i), *supra*; *see also* Compl., ¶¶ 139, 140, 147, 154, 162, 163.) These promises were made without intent to perform and with intent to deceive, evidenced by Defendant's failure to deposit Plaintiff's investment in the Hilton Seattle escrow account, which itself was not an interest-bearing secure account, Defendants' release of escrow funds to the seller before raising the purchase price, and Defendants' failure to deliver any guaranteed preferred returns to Plaintiff after a single quarter even though they kept possession of Plaintiff's investment, as well as their refusal to provide Plaintiff with any documentation as to their use of her funds. (Compl., ¶¶ 148, 149, 156, 164.)   Plaintiff reasonably and justifiably relied on Defendants' promises, misrepresentations, concealments, and omissions as she had no reason to suspect Defendants would defraud her, based on the representations in the SA and IA.  (Compl., ¶ 141-142, 150, 155, 157, 158, 165, 167.) As a result of Defendants' fraudulent acts, Plaintiff invested $300,000 and received nothing in return. (Compl., ¶ 143, 151, 159, 166.)

Because the Complaint sufficiently alleges fraud, the second and third *Eitel* factors weigh in favor of entering default judgment on the fifteenth, sixteenth, seventeenth, and eighteenth cause of action.

### (xi)      Cal. Bus. & Prof. Code §17200 *et seq.* (22nd Cause of Action)

The facts that support the securities and common law fraud claims adequately support a claim under the "unlawful" and "fraudulent" prongs of California's Unfair Competition Law.   "Section 17200 provides a private cause of action for any 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." *Local TV, LLC v. Super. Ct.*, 3 Cal. App. 5th 1, 13 (2016). "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-

made." *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1120 (C.D. Cal. 2001), citing *People v. McKale*, 25 Cal. 3d 626, 632 (1979). "[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Local TV*, 3 Cal. App. 5th at 14.  As discussed herein, Plaintiff's Complaint adequately alleges that Defendants violation §§12 and 15 of the Securities Act, Section 10(b) and Rule 10b-5 of the Securities Exchange Act, and Cal. Corp. Code §§ 25110, 25200, 25400, 25401, 25501, 25501.5, 25504, and 25504.1.  In addition, Defendants' conduct caused substantial injury to Plaintiff, who has been defrauded out of her entire $300,000 investment, which was her retirement savings (Chen Decl., ¶ 44), as a result of Defendants' unlawful and fraudulent conduct.  (Compl., ¶ 190.)

Because the Complaint sufficiently alleges violations of Cal. Bus. & Prof. Code §17200 *et seq.*, the second and third *Eitel* factors weigh in favor of entering default judgment on the twenty-second cause of action.

### 3.    The Amount of Money at Issue

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176.  Defendants egregiously and unlawfully violated federal and California securities laws, breached contractual agreements, engaged in fraud, utilized unethical business practices, and refused to participate in this action. The gravity of Defendants' misconduct and Plaintiff's resulting harm justify the requested damages.

For these reasons, the fourth *Eitel* factor favors the entry of default against Defendants.

### 4.    The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of a dispute as to any material facts in the case.  Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *TeleVideo Sys.*, 826 F.2d at 917-18.

Where the complaint is well-pled and defendants make no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar*, 725 F. Supp. 2d at 921-22.

The Complaint's allegations establish that Defendants committed fraud and violated federal and California securities laws, among others. Once litigated, those allegations would be supported by substantial evidence, as clearly demonstrated by Mrs. Chen's affidavit submitted herewith, which sets forth her damages. Defendants, who have not appeared in this action, would not be able to refute this clear evidence supporting Plaintiff's allegations. Indeed, Defendants have made no attempt to challenge the accuracy of the allegations in the Complaint. As such, there should be no factual dispute precluding entry of default judgment. *Landstar*, 725 F. Supp. 2d at 921-22. This *Eitel* factor thus favors the entry of default judgment.

### 5.     The Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether Defendants' default may have resulted from excusable neglect. This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012); *see also Xerox Corp. v. Am. Mail Ctrs., Inc.*, No. 16-CV-42-DOC-KES, 2016 WL 10835982, at *4 (C.D. Cal. Jul. 20, 2016) ("where the defendants were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion, this factor favors entry of default judgment.").

Here, the Court finds it reasonable to infer that Defendants' default was not caused by excusable neglect as they were each properly served in November 2021. (*See* Garcia Decl., ¶¶ 4, 6, 8-11; Dkt. Nos. 12, 13, 14.) Defendants were served by personal service on each of Woods and Wu, so Defendants are aware of the lawsuit's existence. (*See id.*)

Accordingly, this *Eitel* factor weighs in favor of the entry of default judgment.

### 6.     The Policy of Favoring Decisions on the Merits

The seventh *Eitel* factor recognizes the federal policy favoring disposition of

cases on their merits "whenever reasonably possible." *See Eitel*, 782 F.2d at 1472. Nevertheless, "this preference, standing alone, is not dispositive," and thus "the preference to decide cases on the merits does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, a party's failure to answer a pleading "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Since Defendants did not appear in this action, a dispositive decision on the merits is impossible. Therefore, the seventh *Eitel* factor favors the entry of default judgment against Defendants.

All of the *Eitel* factors weigh in favor of the entry of default judgment. Accordingly, the Court GRANTS Plaintiff's Motion for Entry of Default Judgment against Defendants, jointly and severally.

## IV.  **REMEDIES**

In assessing the appropriate amount of damages on default judgment, the Court does not presume the truth of any factual allegations related to the damages amount. *TeleVideo Sys.*, 826 F.2d at 917-18. Thus, Plaintiff must prove all damages sought in the complaint, and the Court must ensure the amount is reasonable and demonstrated by the evidence through testimony or written affidavit. *Id.*; Fed. R. Civ. P. 55(b).

### A.    **Compensatory Damages**

Plaintiff seeks $340,500 in compensatory damages, constituting (1) her $300,000 investment in UC Seattle that was to be returned to her upon her termination or UC Seattle's failure to acquire the Hilton Seattle, plus (2) nine (9) payments of $4,500, or $40,500, which are the guaranteed preferred returns for the nine (9) completed calendar quarters she has not received payment, even though Defendants maintain possession of her investment, through the date of filing this Motion. (SA, p. 1; Chen Decl., ¶¶ 4-9, 13-14, Exhs. A, B (IA), D.)

The Court finds that Plaintiff is entitled to damages in the amount of

1  $340,500.00 and awards this amount.

2  **B.   Exemplary Damages**

3  Plaintiff seeks treble damages under Cal. Penal Code §496 (c) (14th cause of
4  action), which allows for "three times the amount of actual damages."  Plaintiff is
5  also seeks to punitive damages under Cal. Civ. Code § 3294 (15th – 18th causes of
6  action).  California courts have held that tort damages are allowed where a contract
7  was fraudulently induced.  *See Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999) (citing
8  *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1238-39
9  (1991) (finding tort recovery available where jury could have found sellers
10  misrepresented intent to honor guaranties to induce buyers into consummating sale)).
11  "[N]o public policy is served by permitting a party who never intended to fulfill his
12  obligations to fraudulently induce another to enter into an agreement... 'Although
13  punitive damages may not ordinarily be given for breach of contract... such damages
14  may be awarded where a defendant fraudulently induces the plaintiff to enter into a
15  contract.'"  *Las Palmas*, 235 Cal. App. 3d at 1238-39 (citations omitted).

16  The Court finds that Plaintiff is entitled to $1,021,500 in exemplary damages
17  based on Defendants' theft and fraud, at three times Plaintiff's damages.

18  **C.   Pre-Judgment Interest**

19  Under California law, Plaintiff is entitled to pre-judgment interest on her
20  claims.  Cal. Civ. Code § 3289(b) provides: "If a contract... does not stipulate a legal
21  rate of interest, the obligation shall bear interest at a rate of 10 percent per annum
22  after a breach."  Courts may award prejudgment interest on contract claims where
23  damages are certain or are "capable of being made certain by calculation." Cal. Civ.
24  Code § 3287(a); *Cumbie v. Tibbles*, No. 2:21-CV-01090 JAM AC, 2022 WL
25  17830255, at *8 (E.D. Cal. Dec. 21, 2022).

26  The Court finds that Plaintiff is entitled to prejudgment interest of $40,674.44,
27  running from November 10, 2021, the filing date of the Complaint, through January
28  19, 2023, the filing date of her Motion, and increasing by $93.29 per day thereafter,

through judgment.  (Garcia Decl., ¶ 29.)

### D.    Attorney's Fees

Plaintiff is entitled to recover her reasonable attorney's fees and costs under § 12 of the SA, Cal. Penal Code §496 (c), and Cal. Corp. Code §25501.5 (b).  Plaintiff is also entitled to her costs as the prevailing party.  15 U.S.C. §1117(a); Fed. R. Civ. P. 54 (d)(1) ("[unless a federal statute, these rules, or a court order provides otherwise, costs… should be allowed to the prevailing party.").

Plaintiff is further entitled to recover her reasonable attorney's fees, because (1) the Complaint's allegations, which are accepted as true, allege Defendants' intentional and willful misconduct; and (2) Defendants failed to appear and disregarded this litigation.  Compl., *generally*; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (upholding award of attorney's fees because, "by entry of default judgment, the district court determined, as alleged in [plaintiff's] complaint, that [defendants'] acts were committed knowingly, maliciously, and oppressively, and with an intent to… injure [plaintiffs].");  *Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291-1292 (C.D. Cal. Sep. 17, 2001) ("a case may be considered exceptional where the defendants disregard the proceedings and do not appear.");  *Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("because the defendant has failed to appear, plaintiff may request an award of reasonable attorney fees.").

Plaintiff may bring a separate motion to determine the appropriate amount of the fee award.

### E.    Post-Judgment Interest

Plaintiff is entitled to post-judgment interest on any award of damages.  Under 28 U.S.C. §1961, "postjudgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) (citing *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973)). Post-judgment interest applies to the entire judgment, including principal, pre-judgment

interest, attorney's fees, and costs. *Air Separation*, 45 F.3d at 290, 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding… the date of the judgment." 28 U.S.C. §1961 (a).

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Entry of Default Judgment against Defendant, jointly and severally.  The Court awards Plaintiff $340,500.00 in compensatory damages; $1,021,500.00 in exemplary damages; an award of appropriate attorney's fees and costs; prejudgment interest of $40,674.44, increasing by $93.29 per day thereafter, through judgment; and post-judgment interest as provided by law from the date of entry of judgment until the date the judgment is paid in full.

**IT IS SO ORDERED.**

Dated: _____     _____
Hon. Josephine L. Staton
United States District Judge

1  Respectfully Submitted,

2

3  DATED:  January 19, 2023

4                              GARCIA RAINEY BLANK & BOWERBANK LLP

5

6                              By    _____
                                            */s/ Norma V. Garcia*

7                                        NORMA V. GARCIA
                                         JEFFREY M. BLANK
8                                        Attorneys for Plaintiff
                                         LI MEI CHEN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER RE: MOTION FOR ENTRY OF DEFAULT JUDGMENT